**I.S. JOSEPH COMPANY, INCORPORATED,**

v.

**MICHIGAN SUGAR COMPANY.**

**MICHIGAN SUGAR COMPANY,**

v.

**I.S. JOSEPH COMPANY.**

**MICHIGAN SUGAR COMPANY, Appellant,**

v.

**JOSCO CROWN INTERNATIONAL, LTD., (non-party), Appellee.**

No. 85–5400.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1986.

Decided Oct. 10, 1986.

Steven K. Champlin, Minneapolis, Minn., for appellant.

David F. Herr, Minneapolis, Minn., for appellee.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and LARSON,* Senior District Judge.

ARNOLD, Circuit Judge.

This case involves the question whether a party to a commercial arbitration agreement can be compelled to arbitrate with the assignee of the entity with which it first agreed to arbitrate. More specifically, we are called on to decide who—the arbitrator or the court—must determine the present validity and enforceability of the arbitration agreement. The United States District Court for the District of Minnesota compelled arbitration without ruling on the validity of the assignment. The Court held that any objections to the assignment should be decided by the arbitration panel. We now reverse, for the underlying dispute here goes to the existence of a contract to arbitrate, and therefore is a question of substantive arbitrability to be decided by the courts.[1]

## I.

Michigan Sugar Co. (MSC), a producer of sugar-beet pulp, had a business relationship for a number of years with I.S. Joseph Co. (Joseph), a merchant and broker. During the course of that relationship, certain disagreements led to litigation which was settled through an agreement between MSC and Joseph in April 1984. The agreement included an arbitration clause which read as follows:

Any disputes arising under or relating to this agreement now being entered into the record and arising under or relating to any contract made pursuant to this agreement by the parties shall be resolved by binding arbitration under the rules of the American Arbitration Association, with venue to be at Chicago.

Transcript of Settlement Conference, Joint Appendix at 31. Neither party disputes the validity of this agreement between MSC and Joseph.

Early in 1985, Joseph experienced financial difficulties. In the course of attempting to work out its obligations with its creditors, Joseph transferred part of its business to Josco Crown International, Ltd. (Josco), a new entity. This transaction included the purported assignment of the rights and duties under the previous contract between Joseph and MSC. In March 1985, Joseph was forced into bankruptcy by its creditors. Subsequently, Joseph sought to reopen these proceedings, to substitute Josco as the real party in interest under Fed.R.Civ.P. 25, and to compel MSC to arbitrate with Josco over the remaining differences arising out of the April 1984 agreement and subsequent dealings between the parties.

As might be expected, the parties characterize this dispute in different ways. In Josco's view, its predecessor Joseph entered into an agreement with MSC to engage in certain mutually beneficial dealings and to resolve any ensuing differences through arbitration. The subject matter of the business arrangement has remained the same under Josco; the obligations of the settlement as well as its benefits passed by assignment to Josco; the only change has been in the name of one of the parties. It sees the agreement to arbitrate as an existing obligation which MSC must honor. The meaning and effect of the assignment of the contract from Joseph to Josco is simply

---

* The Hon. Earl R. Larson, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. By contrast, procedural challenges to arbitrability, for example, whether a timely demand for arbitration was made, are for the arbitrator, not the court. *E.g., Stroh Container Co. v. Delphi Indus., Inc.,* 783 F.2d 743, 747–49 (8th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986).

one of the questions which the parties are bound to submit to arbitration.

MSC, on the other hand, while admitting that it made such an agreement with Joseph, stresses that Josco is a stranger to the agreement and that it has no understanding with Josco about arbitration (or, for that matter, anything else). In the present context of the litigation, the dispute is no longer over the terms of an agreement, but rather, whether there is an agreement at all. That, says MSC, is a question that only a court can answer.

## II.

■ The Federal Arbitration Act, 9 U.S.C. § 4, provides that a party aggrieved by the failure of another to arbitrate under a written agreement for arbitration may petition a district court for an order compelling arbitration under the agreement. The role of the court under § 4 is strictly limited to answering one question: Is there a contract between these parties which commits the subject matter of this dispute to arbitration? If such an agreement exists, the court must compel arbitration, with adjudication of the merits of the underlying dispute left entirely to the arbitrator; if, on the other hand, the court determines that there is no agreement of the parties to arbitrate the dispute, then the petition must be denied.

The Act states that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration." It further states "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof."

■ The phrase "the making of the agreement for arbitration" is the essence of the District Court's inquiry under § 4. It includes both a determination of whether the subject matter of the dispute is comprehended within the agreement, *McAllister Brothers, Inc. v. A & S Transportation Co.*, 621 F.2d 519, 522 (2d Cir.1980); *cf. AT & T Technologies, Inc. v. Communications Workers of America*, — U.S. —, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (whether a collective-bargaining agreement creates a duty to arbitrate a particular grievance is a question solely for the courts), and whether there is an agreement between the parties at all, see *Johnson Controls, Inc. v. City of Cedar Rapids*, 713 F.2d 370, 373 (8th Cir.1983); *cf. John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547, 84 S.Ct. 909, 912, 11 L.Ed.2d 898 (1964) (same rule applied in labor context).

■ The Arbitration Act announces a liberal federal policy favoring arbitration agreements. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Doubts regarding arbitrability should be resolved in favor of coverage under the agreement " 'unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *McAllister Brothers*, 621 F.2d at 522, *quoting United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). Nevertheless, any power that the arbitrator has to resolve the dispute must find its source in a real agreement between the parties. He has no independent source of jurisdiction apart from the consent of the parties. If there is in fact a dispute as to whether an agreement to arbitrate exists, then that issue must first be determined by the court as a prerequisite to the arbitrator's taking jurisdiction. See *John Wiley & Sons, Inc.*, 376 U.S. at 547, 84 S.Ct. at 913.[2]

---

**2.** It is conceivable that an arbitration agreement could be drafted so broadly as to give to the arbitrator in the first instance the power to determine arbitrability. See *Necchi S.p.A. v. Necchi Sewing Machine Sales Corp.*, 348 F.2d 693, 696 (2d Cir.1965), *cert. denied*, 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966). Such a broad commitment to the discretion of the arbitrator would be highly unusual, and the party asserting it would be bound to prove clearly the intent of the parties to do so. *Warrior and Gulf Naviga-*

In the present case, MSC does not deny that it made an agreement to arbitrate disputes with Joseph. Josco relies on that fact and on its status as Joseph's assignee in seeking to compel MSC to arbitrate the present dispute. But absent some indication in the original agreement that the parties at that time provided for assignment of their interests under the agreement or otherwise intended to bind themselves to entities not then in existence, the validity of the assignment must be determined under the common law of contract; there is simply nothing in the agreement which provides for this situation. Referral of this issue to arbitration would require the arbitrator to look outside the agreement to the circumstances of the contract itself and the contract law of the state in order to determine his jurisdiction in the matter. That function is one which is reserved for the court under the Act.

The District Court construed MSC's argument as a defense to arbitration that should be addressed to the arbitration panel. But that conclusion assumes the existence of an agreement in the first instance. It begs the issue raised by MSC, i.e., that there is no contractual relationship between MSC and Josco. It is apparent from the transcript of the hearing on October 30, 1985 (see Joint Appendix at 282–83) that the Court bypassed this question, referring the entire matter to the arbitration panel. We do not agree with this conclusion.

Case law supports our holding that the enforceability of an arbitration clause is a question for the court when one party denies the existence of a contract with the other. In *American Safety Equipment Corp. v. J.P. Maguire & Co.*, 391 F.2d 821 (2d Cir.1968), the Court held that the District Court, not the arbitrator, must determine whether an assignee of an arbitration clause can enforce the agreement against one of the original parties. *Id.* at 828–29. Similarly, this Court has held that an alle-

gation that a purported agent had no power to bind his principal to an arbitration contract goes to the existence of the agreement and must therefore be decided by the court. *N & D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d 722, 729 (8th Cir. 1977). See also *McAllister Brothers*, 621 F.2d at 523–24 (whether affiliates of a contracting party are bound by the arbitration clause is a matter that must be tried by the court).

In support of its contention that assignability is an arbitrable question, Josco has cited a number of cases in which assignees or successors acquired the right to enforce an arbitration clause. See, *e.g.*, *Chatham Shipping Co. v. Fertex Steamship Corp.*, 352 F.2d 291 (2d Cir.1965). Josco overlooks the point that in these cases it was the court, not the arbitrator, that made the decision. While we express no views on whether Josco has in fact acquired a right to enforce the arbitration agreement against MSC, we hold that the District Court must decide that question before referring the case to arbitration.

We are advised that on August 5, 1986, after this case was submitted for decision, the panel of arbitrators ruled on this dispute. (Arbitration had gone forward during this appeal, because a stay of arbitration as ordered by the District Court had been denied.) The arbitrators held that the assignment from Joseph to Josco was valid and then went on to make an award resolving the substance of the dispute. The holding that the assignment was valid should be disregarded by the District Court on remand. This issue is to be decided independently by that Court. But if the District Court upholds the assignment, it will not be necessary to repeat the arbitration process. The arbitrators' award would stand, subject, of course, to whatever appellate remedies might be available, either for review by this Court of the District Court's legal holding in favor of assign-

*tion Co.*, 363 U.S. 574, 583 n. 7, 80 S.Ct. 1347, 1353 n. 7. Even in such a case, the court in determining that the parties intended to commit questions of arbitrability to the arbi-

trator, would in effect be making an initial finding that such a contract existed. In the present case there is no evidence of such intent.

ment, or for review of the arbitrators' award in an appropriate forum.

The judgment is reversed, and the cause remanded for further proceedings consistent with this opinion.

It is so ordered.