**SMITH WILSON COMPANY, et al., Plaintiffs,**

v.

**TRADING AND DEVELOPMENT ESTABLISHMENT, et al., Defendants.**

**Civ. A. No. 90–1125 (CRR).**

United States District Court, District of Columbia.

Aug. 31, 1990.

Philip O'Neill, with Charles B. Molster, III, of Keck, Mahin & Cate, Washington, D.C., for plaintiffs.

Chang S. Oh, with Bruce Zagaris of Oppenheimer, Wolff & Donnelly, Washington, D.C., for defendants Trading and Development Establishment and Badawi Al–Masri.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

The above-captioned case arrives in this Court after an international business deal involving a Royal Jordanian Airlines ("Airlines") passenger jet airliner went awry. To assist them in achieving their goal of purchasing and then selling the airplane for a profit, the plaintiffs enlisted the defendants' assistance. Although the precise contours of the relationship between the various parties remains to be resolved, it is sufficient for the moment to say that the defendant Trading and Development Establishment ("T & D") and its sole owner, the defendant Badawi Al–Masri, were to use their influence to encourage Airlines to sell the airplane to the plaintiff. Holding himself out as the plaintiffs' duly authorized agent, the third defendant, Tawfiq Al–Ghanem, signed a Commission Agreement ("Agreement") which purported to promise that T & D would receive an $800,000 commission once Airlines initially accepted a proposal to sell its airplane to the plaintiffs. When T & D claimed its entitlement to this commission, the plaintiffs refused to pay, arguing that the "Agreement" was a nullity because the defendant Al–Ghanem had acted without any authority to bind the plaintiffs.[1]

Pursuant to the provisions of a broad arbitration clause in the "Agreement,"[2] T & D filed an arbitration claim with the American Arbitration Association. In turn,

---

1. Although the plaintiffs filed their Complaint on May 14, 1990, they apparently have not yet succeeded in effecting service upon Al–Ghanem, a national of the United Arab Emirates. The Court has no record of a return of service for Al–Ghanem nor has he entered an appearance. Therefore, when the Court uses the generic term "defendants," it refers only to T & D and Al–Masri.

2. Paragraph 6 of the "Agreement" states, in pertinent part, that "[a]ny controversy or claims arising out of or relating to this agreement, or the breach thereof, and which is not settled between the signatories themselves, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, with hearings to take place in Washington, D.C." Exhibit E, Plaintiffs' Motion to Stay Arbitration Proceedings.

the plaintiffs filed this lawsuit, seeking, *inter alia,* declaratory relief and a stay of the arbitration proceedings pending a judicial determination of the validity of the "Agreement." In addition to opposing the plaintiffs' motion for a stay of arbitration, the defendants have responded by filing a motion to compel arbitration and to stay further judicial proceedings pending completion of arbitration. Upon consideration of the parties' motions and oppositions, the underlying law, and the entire record herein, the Court will stay the proceedings before the American Arbitration Association pending the Court's ruling on the legal validity of the "Agreement."

What little common ground exists between the plaintiffs and the defendants consists of the consensus that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–15, and the case law construing the FAA control the analysis on this issue. On the one hand, the defendants contend that this Court should stay its hand and compel the plaintiff to submit to arbitration because of the FAA's well-established presumption favoring arbitration and specifically because the FAA requires that a court, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, ... *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (emphasis added). On the other hand, the plaintiffs argue that the FAA contemplates that a court—and not an arbitrator—must determine that an agreement to arbitrate exists before it may order the parties to submit to arbitration. *See id.* ("If the making of an arbitration agreement ... be in issue, the Court shall proceed summarily to the trial thereof.").

■ At this early stage in these proceedings, the Court simply cannot be satisfied—as § 4 requires—that the making of the arbitration agreement is not in issue. As the Supreme Court has emphasized, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v.*

*Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). "This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *Id.* 475 U.S. at 648–49, 106 S.Ct. at 1418; *see also Pearce v. E.F. Hutton Group, Inc.,* 828 F.2d 826, 829 (D.C.Cir.1987) ("Arbitration is fundamentally a creature of contract.").

■ The plaintiffs strenuously deny ever entering into a contract with T & D, and they have provided evidence to support their contention that Al–Ghanem, their purported agent, actually had no authority to bind the plaintiffs to any of the provisions contained in the "Agreement." Even if the evidence submitted by the parties is in conflict, the plaintiffs' evidence is sufficient—at this preliminary stage—to support their position because, as in the summary judgment context, the Court must give the party opposing the motion to compel arbitration, "the benefit of all reasonable doubts and inferences that may arise." *Par–Knit Mills v. Stockbridge Fabrics Co.,* 636 F.2d 51, 54 (3d Cir.1980). Thus, if the "Agreement" itself is not a binding contract between T & D and the plaintiffs, then it is impossible to construe the arbitration provision of the "Agreement" to give rise to a contractual duty to arbitrate. *See Hartford Lloyd's Insurance Co. v. Teachworth,* 898 F.2d 1058, 1061 (5th Cir.1990) ("[t]he *sina qua non* of the FAA's applicability to a particular dispute is an agreement to arbitrate the dispute in a contract"). In other words, while a signed arbitration agreement leaves a court with no choice but to compel arbitration, *see, e.g., Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), this proposition applies only if the individuals who signed the agreement are legally authorized to bind the respective parties, *see Par–Knit Mills,* 636 F.2d at 54–55 (reversing district court's order compelling arbitration and noting that "[t]he mere execution of a document, ... even

assuming that it is executed by a corporate agent, does not negate the factual assertion that such signature was not intended to represent a contractual undertaking").

The foregoing demonstrates that this case belongs in that first category of arbitrability cases involving "disputes over the formation of an agreement to arbitrate—i.e., whether the parties ever agreed to submit *anything* to arbitration in the first place." *National R.R. Passenger Corp. v. Boston & Maine Corp.*, 850 F.2d 756, 761 (D.C.Cir.1988) (emphasis added).[3] A court—and not an arbitrator—must resolve this threshold question of whether the parties ever entered into an arbitration agreement since there is no authority to require a party to submit to arbitration if there never was an agreement to arbitrate. *Id.* This result comports with both the language of the FAA, which protects the right to a jury trial of the party contesting the existence of an arbitration agreement, *see* 9 U.S.C. § 4, and with common sense because "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *Par-Knit Mills*, 636 F.2d at 54; *see also I.S. Joseph Co. v. Michigan Sugar Co.*, 803 F.2d 396, 398, 399 (8th Cir.1986) (reversing district court's order compelling arbitration because "the underlying dispute here goes to the existence of a contract to arbitrate, and therefore is a question of substantive arbitrability to be decided by the courts" and noting that essence of a district court's inquiry under § 4 includes determination of "whether there is an

agreement between the parties at all"); *cf. N & D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d 722, 729 (8th Cir.1976) (whether plaintiff's agent, who signed contract, was authorized to enter into arbitration agreement on plaintiff's behalf "is a question for decision by the courts, because it goes expressly to the making of the agreement to arbitrate"). Thus, before it may grant the defendants' motion to compel the plaintiffs to submit to arbitration, the Court must decide whether the "Agreement" is valid and legally binding.

█ In resisting this conclusion, the defendants make two kinds of arguments; one has no merit and the other is premature. First, the defendants' reliance on the "fraud in the inducement" rule of *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and its progeny is misplaced. It is well established that the dispute must be arbitrated when a party raises fraud in the inducement of the contract generally whereas when "the claim is fraud in the inducement of the *arbitration clause itself*—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it." *Id.* at 403–04, 87 S.Ct. at 1806 (emphasis added); *accord Manning v. Energy Conversion Devices, Inc.*, 833 F.2d 1096, 1103 (2d Cir. 1987); *Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 868 (7th Cir.1985); *N & D Fashions, Inc.*, 548 F.2d at 728; *Leone v. Advest, Inc.*, 624 F.Supp. 297, 301 (S.D.N.Y. 1985). The rationale behind this proposition is that under certain circumstances—

---

**3.** In arguing that an arbitrator rather than the Court should decide whether the plaintiffs and T & D ever entered into a binding contract, the defendants incorrectly place this case in the different category of cases in which the parties concede the existence of an enforceable contract containing an arbitration provision but disagree over whether their particular dispute is covered by the arbitration clause. In any event, this distinction is not outcome-determinative here because most courts, including the Supreme Court, have held that whether a dispute is within the scope of a concededly valid arbitration agreement is in most instances a question for judicial rather than arbitral resolution. *See, e.g., AT & T Technologies, Inc.*, 475 U.S. at 649, 106 S.Ct. at 1419 (" 'whether or not the company

was bound to arbitrate, *as well as what issues it must arbitrate,* is a matter to be determined by the Court' " (emphasis added) (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546–47, 84 S.Ct. 909, 912, 11 L.Ed.2d 898 (1964)); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985) ("the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute"); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir.1987) ("a court asked to stay proceedings pending arbitration in a case covered by the [FAA] ... must determine whether the parties agreed to arbitrate ... [and] must determine the scope of that agreement" (citation omitted)).

but not always—an arbitration clause is severable from the rest of the contract and therefore is not "infected" by the dispute going to the contract's central purpose. *Matterhorn, Inc.,* 763 F.2d at 868–69 ("An arbitration clause will *often* be 'severable' from the contract in which it is embedded, in the sense that it *may* be valid even if the rest of the contract is invalid." (emphasis added)); *see Sauer–Getriebe KG v. White Hydraulics, Inc.,* 715 F.2d 348, 350 (7th Cir.1983) (ordering arbitration of dispute over enforceability of contract because "[t]he agreement to arbitrate and the agreement to buy and sell motors are separate" and because plaintiff's "promise to arbitrate was given in exchange for [defendant's] promise to arbitrate and each promise was sufficient consideration for the other"), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984).

However, here the plaintiffs do not claim that they were fraudulently induced into signing a contract or that only the commission part of the "Agreement," and not the arbitration clause itself, is invalid. Rather the plaintiffs contend that, since nobody authorized to act on their behalf ever executed the "Agreement," every single part of the "Agreement"—*including the arbitration provision*—is null and void. In other words, this dispute must be resolved by the Court rather than an arbitrator because, unlike in *Matterhorn, Inc.* and *Sauer–Getriebe KG* where the parties did not dispute signing a contract, here the invalidity of the "Agreement"—if proven—may simultaneously invalidate the arbitration provision contained therein.

In making their second type of argument, that the "Agreement" is enforceable because of Al-Ghanem's implied or apparent authority or because the plaintiffs' subsequent actions affirmed the contract, the defendants skip the appetizer and begin gobbling up the main course. These arguments go to the merits of whether the "Agreement" binds the parties instead of addressing the preliminary question now before the Court of whether that substantive dispute requires judicial or arbitral resolution. Espousing no view on the merits of the defendants' premature contract arguments, today the Court decides only that it—not an arbitrator—must determine whether the plaintiffs are bound by the "Agreement," because cases construing the FAA state unequivocally that a court deciding the threshold question of arbitrability may not rule on the potential merits of the underlying claims, not even if they seem frivolous. *AT & T Technologies, Inc.,* 475 U.S. at 650, 106 S.Ct. at 1419; *see also Concourse Village, Inc. v. Local 32E, Serv. Employees Int'l Union,* 822 F.2d 302, 304 (2d Cir.1987); *Municipal Energy Agency v. Big Rivers Elec. Corp.,* 804 F.2d 338, 342 (5th Cir.1986); *I.S. Joseph Co. v. Michigan Sugar Co.,* 803 F.2d 396, 399 (8th Cir.1986).

In light of the foregoing, the Court will leave for another day, after further briefing by the parties (the plaintiffs correctly have not yet addressed the merits), the issue of whether the "Agreement" binds the plaintiffs. Therefore, the arbitration proceedings pending before the American Arbitration Association must be stayed and may continue only if the Court (or a jury), *see* 9 U.S.C. § 4, has determined that the plaintiffs are bound by the arbitration provision of the "Agreement." The Court will order the parties to confer for the purpose of agreeing upon a briefing schedule and drafting a proposed order for the Court to consider at the status call set for September 24, 1990.

The Court will issue of even date herewith an Order in accordance with the foregoing Memorandum Opinion.

## ORDER

In accordance with the Court's Memorandum Opinion of even date herewith, it is, by the Court, this 30 day of August, 1990,

ORDERED that the plaintiffs' Motion to Stay Arbitration Proceedings shall be, and hereby is, GRANTED; and it is

FURTHER ORDERED that the arbitration proceedings pending before the American Arbitration Association under Complaint No. 16 T145 00163 90M shall be, and hereby are, STAYED until further Order of this Court; and it is

FURTHER ORDERED that the defendants' Motion to Compel Arbitration shall be, and hereby is, DENIED without prejudice; and it is

FURTHER ORDERED that the parties shall confer and agree upon a briefing schedule on the issue of whether a valid contract between the parties exists; and it is

FURTHER ORDERED that, at the status call set for 9:30 a.m. September 24, 1990, the parties shall present for the Court to consider a proposed order setting forth the above-ordered briefing schedule.