ON APPLICATION FOR REHEARING
The opinion of August 14, 1992, is withdrawn, and the following is substituted therefor.
Shearson Lehman Brothers, Inc. ("Shearson"), appeals from a judgment denying Shearson's motion to compel arbitration in an action filed by Charles R. Crisp, Wendell Dunaway, Gino Fedeli, W. C. Henry, Jr., James P. Powell, and Richard F. Powell ("plaintiffs"). We vacate the judgment and remand the cause with directions.
In a series of transactions from October 4, 1989, until August 27, 1990, Edward L. Pope III, Shearson's employee and financial consultant, sold to the plaintiffs "working interest securities" in a project involving the development of coalbed methane gas wells in St. Clair County. In connection with these transactions, the plaintiffs executed a number of "client agreements" containing the following provisions:
 "Any controversy arising out of or relating to any of my accounts, to transactions with you, your officers, directors, agents and/or employees for me, or to this agreement, or the breach thereof, or relating to transactions or accounts maintained by me with any of your predecessor firms by merger, acquisition or other business combination from the inception of such accounts, shall be settled by arbitration, in accordance with the rules then if effect of the NASD, or the Boards of Directors of the NYSE or the American Stock Exchange, Inc., as I may elect."
(Executed by Crisp on August 1, 1988, and by Henry on February 29, 1988, emphasis added.)
 "Unless unenforceable due to federal or state law, any controversy arising out of or relating to my accounts, to transactions with you, your officers, directors, agents and/or employees for me or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules then in effect, of the National Association of Securities Dealers, Inc. or the Boards of Directors of the New York Stock Exchange, Inc. and/or the American Stock Exchange, Inc. as I may elect."
(Executed by James Powell on August 24, 1987, and by Richard Powell on September 6, 1987, emphasis added.)
 "Any controversies arising out of or relating to any of my accounts, to transactions with Shearson Lehman and/or its employees and/or agents for me or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules, then in effect, of any contract market where the transaction(s) giving rise to *Page 615 
the controversy were or could have been executed or of the National Futures Association or of the Board of Directors of the New York Stock Exchange, Inc."
(Executed by Fedeli on June 15, 1987, and by Dunaway on April 22, 1985, emphasis added.) The plaintiffs allege that Pope assured them that he would contribute his personal influence and financial support in order to acquire the capital necessary to complete the project.
On February 8, 1990, David Prince, a Shearson vice-president, sent James Powell a letter stating in pertinent part:
 "It has recently come to our attention that you may have invested in Jenco Petroleum, Inc. or a related entity. This investment may have been the result, directly or indirectly, of Edward L. Pope individually and not in his capacity as a representative of Shearson Lehman. . . . Attached please find an acknowledgment form which we request you sign and return. This document states, briefly, that your investment into Jenco was not made through the participation or interests of Shearson Lehman . . ., and that you have not relied on any representations of Mr. Pope in his capacity as an agent of Shearson.
 "While this release, among other things, holds Shearson Lehman . . . harmless from resultant action involving Jenco, it would not limit or preclude the signatory from pursuing any of the parties who do have a connection to Jenco Petroleum."
(Emphasis added.)[1]
The plaintiffs allege that Shearson ultimately caused Pope to terminate his involvement with the project, resulting in the project's failure and, consequently, financial loss to the plaintiffs.[2]
On May 7, 1991, the plaintiffs sued Shearson and Edward L. Pope III. The plaintiffs alleged, among other things, that Shearson, "by and through" its agent Edward Pope, fraudulently issued the securities to the plaintiffs, breached fiduciary duties, interfered with the plaintiffs' contracts, and violated various sections of the securities statutes of Alabama and Georgia.
On June 21, 1991, Shearson moved to compel arbitration pursuant to clauses contained in agreements executed by the plaintiffs incident to the opening of their accounts. On September 6, 1991, the plaintiffs offered to arbitrate the dispute, subject to the following stipulation:
 "Plaintiffs' dealings with Edward L. Pope, III ('Pope') in connection with the plaintiffs' investments in the coalbed methane project that is the subject of this suit constituted dealings with Pope in his capacity as an agent and employee of Shearson-Lehman Brothers, Inc., and plaintiffs' investments in the project constituted a transaction and a dealing with Shearson. This stipulation applies to all named plaintiffs, and all named plaintiffs agree to submit to arbitration claims relating to or arising out of their transactions and dealings with Shearson, relating in any way to the said coalbed methane project."
(Emphasis added.) Shearson refused the plaintiffs' offer to arbitrate subject to the proposed stipulation, and, on September 9, 1991, the trial court overruled Shearson's motion to compel arbitration; the plaintiffs appealed.
The plaintiffs contend, in effect, that an order compelling arbitration is inappropriate absent a finding or stipulation that Pope acted in a representative capacity in effecting the transactions involving the working interest securities. As they point out, Shearson, by soliciting stipulations that the "investment[s] . . . [were] not made through the participation or interests of Shearson Lehman" and that the plaintiffs had not relied "on any representations of Mr. Pope in his capacity as an agent of Shearson," and by rejecting the plaintiffs' arbitration offer containing the plaintiffs'affirmative agency stipulation, have, in effect, declared that, as to the transactions involving the working interest securities, no contractual relationship *Page 616 ever existed between the plaintiffs and Shearson.
Indeed, Shearson urges a construction of the contracts that is broad enough to invoke the arbitration clauses on the basis of Pope's working-interest securities transactions, but, at the same time, narrow enough to preclude the application of respondeat superior or principal-and-agent rules based on the same transactions. Shearson contends, in other words, that the disputed transactions were independent of its contractual relationship with the plaintiffs for the purposes of itsliability to the plaintiffs. This argument differs little in substantive effect from an assertion that Pope lacked the authority to bind it in a contractual agreement with the plaintiffs. In a class of cases involving the issue of a signatory's authority, and, consequently, the existence vel non
of a contract that encompasses the disputed subject matter, a number of well-reasoned authorities have held that the question of the signatory's authority and agency is a threshold issue that must be adjudicated before arbitration can proceed.
More specifically, in Prima Paint Corp. v. Flood ConklinManufacturing Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270
(1967), the United States Supreme Court, construing the Federal Arbitration Act, 9 U.S.C. § 1-16 (1982), held that a claim of fraud in the inducement of a contract that does not place in issue the making of the arbitration clause itself, is subject to arbitration. Prima Paint, 388 U.S. at 403-04,87 S.Ct. at 1805-06. Although Prima Paint has ostensibly been construed to require the arbitration of any claim "unless there has been an independent challenge to the making of the arbitration clause itself," Unionmutual Stock Life Insurance Co. of America v.Beneficial Life Insurance Co., 774 F.2d 524, 529 (1st Cir. 1985); Rhoades v. Powell, 644 F. Supp. 645, 653
(E.D.Cal. 1986), aff'd sub nom., Rhoades v. Merrill, Lynch,Pierce, Fenner Smith, Inc., 961 F.2d 217 (9th Cir. 1992), it appears that the majority of courts have, on better reasoning, read Prima Paint more narrowly. In this connection, ThreeValleys Municipal Water District v. E.F. Hutton Co.,925 F.2d 1136 (9th Cir. 1991), stated:
 "We do not read Prima Paint so broadly. The plaintiffs in Rhoades and Unionmutual did not challenge the making of a contract, but sought to rescind a contract that admittedly existed. Despite the broad dicta in those cases suggesting that Prima Paint extends to 'all challenges to the making of a contract,' we read Prima Paint as limited to challenges seeking to avoid or rescind a contract — not to challenges going to the very existence of a contract that a party claims never to have agreed to. A contrary rule would lead to untenable results. Party A could forge party B's name to a contract and compel party B to arbitrate the question of the genuineness of its signature. Similarly, any citizen of Los Angeles could sign a contract on behalf of the city and Los Angeles would be required to submit to an arbitrator the question whether it was bound to the contract, even if its charter prevented it from engaging in any
arbitration.
 "Under this view, Prima Paint applies to 'voidable' contracts — those 'where one party was an infant, or where the contract was induced by fraud, mistake, or duress, or where breach of a warranty or other promise justifies the aggrieved party in putting an end to the contract.' Restatement (Second) Contracts § 7 comment b (1981). If the dispute is within the scope of an arbitration agreement, an arbitrator may properly decide whether a contract is 'voidable' because the parties have agreed to arbitrate the dispute. But, because an 'arbitrator's jurisdiction is rooted in the agreement of the parties,' George Day Constr. Co. v. United Bhd. of Carpenters, Local 354, 722 F.2d 1471, 1474 (9th Cir. 1984); see also I.S. Joseph Co. v. Michigan Sugar Co., 803 F.2d 396, 399
(8th Cir. 1986) (an arbitrator 'has no independent source of jurisdiction apart from the consent of the parties'); Smith Wilson Co. v. Trading Dev. Establishment, 744 F. Supp. 14, 16 (D.D.C. 1990) ('arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration'), a party *Page 617 
who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate. Only a court can make that decision.
 "Ample case law supports this holding. See, e.g., Camping Constr. Co. v. District Council of Iron Workers, Local 378, 915 F.2d 1333, 1340 (9th Cir. 1990) ('The court must determine whether a contract ever existed; unless that issue is decided in favor of the party seeking arbitration, there is no basis for submitting any question to an arbitrator'); National R.R. Passenger Corp. v. Boston Maine Corp., 850 F.2d 756, 761 (D.C. Cir. 1988) ('if there was never an agreement to arbitrate, there is no authority to require a party to submit to arbitration'); I.S. Joseph Co., 803 F.2d at 400 ('the enforceability of an arbitration clause is a question for the court when one party denies the existence of a contract with the other'); Cancanon v. Smith Barney, Harris Upham Co., 805 F.2d 998 (11th Cir. 1986) (defense of fraud in the factum is not arbitrable). In fact, there are at least four cases, under the Federal Arbitration Act, where a court has held that the question of whether a particular individual has authority to bind a party must be determined by the court, not by an arbitrator. See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51 (3d Cir. 1980); N D Fashions, Inc. v. DHJ Indus., Inc., 548 F.2d 722 (8th Cir. 1976); Smith Wilson Co. v. Trading Dev. Establishment, 744 F. Supp. 14
(D.D.C. 1990); Ferreri v. First Options, Inc., 623 F. Supp. 427 (E.D.Pa. 1985).
 "Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51 (3d Cir. 1980), is directly on point. There the documents in question were signed by the production manager of the appellant. The appellant argued that the contracts were not binding on it because they were not signed by a corporate officer. 'If the production manager did not have the actual or apparent authority to execute the contract, the corporation cannot be bound. . . .' Id. at 55. The Third Circuit reversed the district court's order staying the federal court proceeding pending completion of arbitration.
The court explained:
 " 'Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect. If there is doubt as to whether such an agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury. Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement. . . .'
"Id. at 54 (footnotes omitted)."
Three Valleys Municipal Water Dist., 925 F.2d at 1140-41 (emphasis in original) (footnotes omitted); see also InteroceanShipping Co. v. National Shipping Trading Corp.,462 F.2d 673, 676 (2d Cir. 1972) (issue regarding the "very existence" of a contract is justiciable); cf. Camaro Trading Co., Ltd. v.Nissei Sangyo America, Ltd., 577 So.2d 1274, 1275 (Ala. 1991) (question of the validity of a contract involving a corporation not qualified to transact business in Alabama is to be judicially determined). The analysis in Three Valleys MunicipalWater District, in which the plaintiffs sought to avoid
arbitration on the ground that the signatory lacked the authority to execute the contracts, is instructive in this case, in which the defendant Shearson is attempting to compel
the arbitration of a dispute arising out of transactions that, it contends, Pope was not authorized to initiate.
As Shearson properly recognizes, its liability to the plaintiffs turns on whether Pope was acting in a representative or employee capacity in involving the plaintiffs with the working interest securities. A negative answer to this question would, it appears, effectively eliminate Shearson's involvement in the action and would also obviate its demand for arbitration. The question of Pope's representative capacity or authority in effecting these transactions is, therefore, a threshold issue requiring resolution before an order compelling arbitration would be appropriate. In other words, as ThreeValleys Municipal Water District succinctly illustrates *Page 618 
in an analogous situation, this question is precedent and justiciable. See also Republic of Nicaragua v. Standard FruitCo., 937 F.2d 469, 480 (9th Cir. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1294, 117 L.Ed.2d 516 (1992) (the issue of agency "is properly before the court rather than before an arbitrator").
But there is an additional — and, perhaps, more compelling — rationale for denying arbitration at this stage in the controversy. Specifically, a finding that Pope was not acting in a representative capacity or within the scope of his employment when he effected the disputed transactions would place the plaintiffs' claims outside the scope of the arbitration provisions. Indeed, Pope's bare status as anemployee does not, of itself, provide a nexus with Shearson's business sufficient to invoke the application of the arbitration clauses. Cf. A.G. Edwards Sons, Inc. v. Clark,558 So.2d 358, 361 (Ala. 1990) (dispute between a plaintiff stockbroker and the employer of a defendant stockbroker, based on a claim of defamation was not arbitrable, where the "alleged defamation did not arise in connection with any business between" the parties).
As a general rule, an employer or principal incurs vicarious liability to third parties only for the acts of an employee that are performed within the scope of the employment,Chamlee v. Johnson-Rast Hays, 579 So.2d 580 (Ala. 1990);Hendley v. Springhill Memorial Hosp., 575 So.2d 547 (Ala. 1990); or for the acts of an agent that are performed within the scope of the agency. Standard Oil Co. of Kentucky v. Gunn, 234 Ala. 598,176 So. 332 (1937); 3 C.J.S. Agency § 390 (1986). Thus, in the absence of express language indicating a contrary intention, the signatories to these contracts cannot be deemed to have contemplated that the arbitration provisions would apply to actions of Pope taken "individually and not in his capacity as a representative of Shearson," or to transactions in which Shearson had no "participation or interests." On the contrary, the provisions must be understood as applying only to transactions involving Shearson's "agents and/or employees" qua
agents and/or employees. Cf. Old Republic Ins. Co. v. Lanier,644 So.2d 1258 (Ala. 1994) (construction of the scope of an arbitration provision must reflect Alabama's "strong public policy against arbitration").
Like agency questions generally, whether Pope was acting in an agency capacity is a disputed factual issue that requires a jury's resolution. See Joseph Land Co. v. Gresham,603 So.2d 923, 926 (Ala. 1992); Secor Bank v. Bailey, 596 So.2d 900, 901
(Ala. 1992); Merrell v. Joe Bullard Oldsmobile, Inc.,529 So.2d 943, 945 (Ala. 1988). For this reason, we cannot, as Shearson asks us to do, "simply 'ascertain whether the parties intendedthe particular dispute to be arbitrable as evidenced by thelanguage contained in the arbitration agreement.' " Reply Briefof Appellant, at 6 (quoting A.G. Edwards Sons, Inc. v.Clark, 558 So.2d 358, 361 (Ala. 1990), emphasis supplied by appellant).
We wish to emphasize at this point, however, that the question of capacity is only a threshold issue; therefore, if the jury should resolve it adversely to Shearson, the dispute must proceed to arbitration. In other words, the absence of such a finding is the only apparent impediment to the arbitration of this dispute.
For these reasons, the judgment of the trial court is vacated and the cause is remanded with directions to submit to a jury the questions whether, as the plaintiffs alleged in their conditional offer to arbitrate, the "[p]laintiffs' dealings with [Pope], in connection with [their] investments in the coalbed methane project . . . constituted dealings with Pope in his capacity as an agent and employee of [Shearson]," and, therefore, whether the "plaintiffs' investments in the project constituted a transaction and a dealing with Shearson."
APPLICATION FOR REHEARING GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; JUDGMENT VACATED; REMANDED WITH DIRECTIONS.
MADDOX, SHORES, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur. *Page 619 
[1] During February 1990, all of the plaintiffs received substantially identical correspondence from Mr. Prince.
[2] These particular allegations were specifically set out in the plaintiffs' complaint, count five, which alleged that Shearson had intentionally interfered with the plaintiffs' contractual relationships.