867 So.2d 1112 (2003)
Ex parte MOUNTAIN HEATING AND COOLING, INC.
(In re Mountain Heating and Cooling, Inc. v. Van Tassel-Proctor, Inc.)
1011835.
Supreme Court of Alabama.
May 2, 2003.
*1114 Jim H. Fernandez of Fernandez, Holtz & Combs, LLC, Mobile, for petitioner.
Submitted on petitioner's brief only.
PER CURIAM.
Mountain Heating and Cooling, Inc. ("MHC"), petitioned for a writ of certiorari to review the Court of Civil Appeals' affirmance of the trial court's order compelling arbitration in its contract action against Van Tassel-Proctor, Inc. ("VTP"). We granted the petition to determine if certain ambiguities in the contract cast doubt on whether the parties agreed to arbitrate their disputes. We reverse and remand.

I. Facts
VTP, an Arkansas corporation, is the primary contractor for a Carmike Cinema construction project located at Springdale Mall in Mobile, Alabama. VTP contracted with MHC, a subcontractor, to do the heating, ventilation, and air conditioning work for the project. MHC is an Alabama corporation. The contract signed by the parties contained an arbitration provision that states, in pertinent part:
"B) ARBITRATION: Subcontractor [MHC] agrees that all questions arising under this Subcontract shall be resolved in the first instance by Contractor's [VTP's] Project Manager.... Any claim not satisfactorily resolved by Contractor's Project Manager in the first instance, and which is presented in writing within the time provided, may be appealed by notice in writing to ... an Executive Officer of the Contractor if any other question under the Subcontract is involved. Such written notice and review shall be prerequisite to any further review or any legal action by the Subcontractor against the Contractor, Architect, and/or Owner. And if said dispute cannot be settled through direct discussions the parties agree to settle the dispute by arbitration under the Construction Industry Mediation Rules of the American Arbitration Association. Subcontractor agrees that it will reimburse, hold harmless and/or indemnify any attorney's fees and costs incurred by Contractor in connection with any dispute related to this contract, whether or not suit is filed. IN THE EVENT OF ANY LITIGATION ARISING HEREUNDER, THE CONTRACTOR AND SUBCONTRACTOR UNCONDITIONALLY AND ABSOLUTELY WAIVE ANY AND ALL RIGHTS TO TRIAL BY JURY."
(Emphasis added; capitalization in original.)
The parties struck through the last sentence, and Ted Van Tassel, president of VTP, and Paul James, president of MHC, initialed the change in the margin adjacent to that sentence, signifying agreement to the change at the time the contract was executed. VTP does not dispute that the sentence waiving the right to a jury trial was struck from the contract.
MHC was not paid the final draw under its subcontract; it sued VTP to recover that amount. MHC filed a motion for a summary judgment based upon the contract. VTP then filed a motion to compel arbitration based upon the contract; it supported the motion with an affidavit by Van Tassel, detailing the substantial effect the transaction had on interstate commerce. MHC filed a response to the motion, including an affidavit from James. On August 31, 2001, the trial court entered an order compelling arbitration; it also found MHC's summary-judgment motion to be moot.
MHC originally appealed directly to this Court, but we transferred the case to the Court of Civil Appeals pursuant to § 12-2-7(6), Ala.Code 1975. The Court of Civil *1115 Appeals affirmed the circuit court's order granting VTP's motion to compel arbitration. Mountain Heating & Cooling, Inc. v. Van Tassel-Proctor, Inc., 867 So.2d 1104 (Ala.Civ.App.2002). MHC then petitioned this Court for certiorari review. We granted the petition to determine whether the contract evinces an intention by both parties to arbitrate their disputes.

II. Standard of Review
"[T]he standard of review of a trial court's ruling on a motion to compel arbitration at the instance of either party is a de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review." Ex parte Roberson, 749 So.2d 441, 446 (Ala.1999). "The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction [substantially] affecting interstate commerce." Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000). "`[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.'" Fleetwood Enters., Inc., 784 So.2d at 280 (quoting Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995)) (emphasis omitted).

III. Analysis
MHC argues that certain language included in the arbitration provision of its contract with VTP and language omitted from that contract show that it did not agree to arbitrate its claims against VTP. "This Court has clearly and consistently held that `"a party cannot be required to submit to arbitration any dispute he has not agreed to submit."'" Ex parte Stallings & Sons, Inc., 670 So.2d 861, 862 (Ala.1995) (quoting Old Republic Ins. Co. v. Lanier, 644 So.2d 1258, 1260 (Ala.1994), quoting in turn A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358, 362 (Ala.1990)).
"`If there is doubt as to whether such an agreement [to arbitrate] exists, the matter, upon a proper and timely demand, should be submitted to a jury. Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement.'"
Allstar Homes, Inc. v. Waters, 711 So.2d 924, 929 (Ala.1997) (overruled on other grounds by Ex parte Perry, 744 So.2d 859 (Ala.1999), quoting Shearson Lehman Bros. v. Crisp, 646 So.2d 613, 616 (Ala. 1994)); see, e.g., Ex parte Roberson, 749 So.2d at 445. "Whether a contract is ambiguous is a question of law for the trial court to determine." Underwood v. South Central Bell Tel. Co., 590 So.2d 170, 175 (Ala.1991).
"In interpreting a contract, the `"words of the agreement will be given their ordinary meaning."' Hibbett Sporting Goods, Inc. v. Biernbaum, 391 So.2d 1027, 1029 (Ala.1980) (quoting Flowers v. Flowers, 334 So.2d 856, 857 (Ala.1976)). An `instrument is unambiguous if only one reasonable meaning clearly emerges.' Vainrib v. Downey, 565 So.2d 647, 648 (Ala.Civ.App.1990); see also Flowers, 334 So.2d at 857. `If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court.... However, if the terms within the contract are ambiguous in any respect, the determination of the true meaning of the contract is a question of fact to be resolved by a jury.' McDonald v. U.S. Die Casting & Development *1116 Co., 585 So.2d 853, 855 (Ala. 1991) (citations omitted)."
Reeves Cedarhurst Dev. Corp. v. First Amfed Corp., 607 So.2d 184, 186-87 (Ala. 1992).
MHC argues that the contract as a whole, and the arbitration provision in particular, when examined closely, are ambiguous as to whether the parties agreed to arbitrate disputes. The most glaring instance of ambiguity in the arbitration provision is the statement that "the parties agree to settle the dispute by arbitration under the Construction Industry Mediation Rules of the American Arbitration Association." (Emphasis added.) The American Arbitration Association ("the AAA") has both "Construction Industry Arbitration Rules" and "Construction Industry Mediation Rules." Arbitration and mediation are separate and distinct methods of resolving disputes under the AAA rules.[1] Presiding Judge Yates, in her dissent to the Court of Civil Appeals' opinion, correctly notes that the Construction Industry Mediation Rules provide a form of nonbinding mediation in which the parties are not required to waive their rights to trial by jury. 867 So.2d at 1111.
VTP offers an explanation for the curious wording of the arbitration provision. According to VTP, the word "mediation" in the title "Construction Industry Mediation Rules" is a typographical error; it should have read "Construction Industry Arbitration Rules." The Court of Civil Appeals agreed that the use of the word "mediation" in the title is merely a typographical error. However, nothing in the record indicates that VTP offered this explanation to the trial court, nor is there any evidence in the record to support a finding that the use of the word "mediation" in the title is a typographical error. In Cooper v. Adams, 295 Ala. 58, 61, 322 So.2d 706, 708 (1975), this Court held that there must be support in the record for a claim before an appellate court can consider the claim. Thus, without support, we cannot consider the suggestion that the use of the word "mediation" in the title of the rules is a typographical error. VTP's suggestion that it is a typographical error highlights the ambiguity of the arbitration provision.
It is also curious that this sentence includes the statement that "the parties agree to settle the dispute by arbitration...." (Emphasis added.) MHC notes that typically a settlement occurs through mediation, whereas a decision is imposed as a result of arbitration. In the context of that statement, the word "settle" perhaps simply means "resolve," i.e., "the parties agree to [resolve] the dispute by arbitration," rather than a meaning encompassed within the legal definition of the word "settle." To resolve the dispute by arbitration makes sense, but to settle, in the legal sense, a dispute by arbitration is a contradiction of terms. Given the confusion already present in this passage, it would be unwise for this Court to venture a guess as to which meaning the parties intended. This wording again raises an ambiguity because the passage is susceptible to two readings. See, e.g., Reeves Cedarhurst Dev. Corp., supra.
MHC further points out that the parties struck the following sentence from the arbitration provision: "In the event of any litigation arising hereunder, the contractor and subcontractor unconditionally and absolutely *1117 waive any and all rights to trial by jury." This Court has held previously that "[i]t goes without saying that signing an agreement providing that all disputes are to be resolved exclusively through arbitration is equivalent to waiving one's right to a trial by jury." Thermo-Sav, Inc. v. Bozeman, 782 So.2d 241, 243 (Ala.2000). Thus, a jury-waiver clause is not necessary in an arbitration provision. By implication then, the act of striking that clause does not alone call into question whether the parties agreed to arbitrate disputes.
However, while the strike-through of the jury-waiver clause does not create sufficient ambiguity to warrant a jury trial on the issue of arbitrability, in the context of this contract it raise questions as to the intent of these parties regarding arbitration. The most obvious question is: why would the parties bother striking the jury-waiver sentence if they had agreed to arbitrate disputes anyway? Signing an arbitration contract is the equivalent of waiving one's right to a jury trial, see Bozeman, supra; therefore, it would appear that there would have been no objection to a sentence that further clarified that the parties were not to seek redress in court. Yet the sentence is one of the few passages in the contract that MHC president Paul James specifically crossed out and that both signatories agreed would not apply. Indeed, in his affidavit submitted in opposition to VTP's motion to compel arbitration, James states that he struck "from Paragraph 22 [the `applicable law' and arbitration provision] all language I believed compelled me to arbitrate issues or waive my right to a court trial. It is my habit, when negotiating contracts on behalf of [MHC] not to agree to arbitrate issues." The striking of this language indicates, though it does not prove, that MHC did not intend to agree to arbitrate its disputes with VTP.
A change in another portion of the contract between VTP and MHC indicates that MHC did not intend to settle disputes by arbitration. "Under general Alabama rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract." Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala.2000) (emphasis added.) The arbitration provision is subparagraph B of paragraph 22 of the contract, which is entitled "LAWS, DISPUTES, ATTORNEYS' FEES." Subparagraph A of paragraph 22 deals with the choice of law that is to govern the contract. As was mentioned above, James stated in his affidavit that he changed "all language" in paragraph 22 that he believed forced MHC to arbitrate disputes. Originally, subparagraph A stated, in pertinent part: "A) APPLICABLE LAW: This Agreement is entered into in Little Rock, Arkansas and shall be construed and governed by the laws of the State of Arkansas." However, James modified subparagraph A to read: "This Agreement is entered into in Mobile, Alabama and shall be construed and governed by the laws of the State of Alabama." (Emphasis added.) Van Tassel agreed to and initialed this change, just as he did the striking of the jury-waiver sentence in the arbitration provision in subparagraph B.
In Arkansas, "arbitration is `strongly favored.'" Hart v. McChristian, 344 Ark. 656, 662, 42 S.W.3d 552, 556 (2001) (quoting Anthony v. Kaplan, 324 Ark. 52, 57, 918 S.W.2d 174, 177 (1996)). Conversely, Alabama statutory law disfavors predispute arbitration unless the contract evinces a substantial effect on interstate commerce, so that federal law would govern. See § 8-1-41(3), Ala.Code 1975; Ex parte Messer, 797 So.2d 1079, 1082 (Ala.2001). Thus, the modification of the choice-of-law provision from Arkansas to *1118 Alabama, when read in conjunction with the striking of the jury-waiver sentence in subparagraph B of paragraph 22 and James's testimony, provides good reason to question whether arbitration was the parties' selected method of resolving disputes under this contract.
When all of the modifications and ambiguities in the contract are considered together, we agree with MHC that there is a question regarding arbitrability that warrants a jury determination on the issue. As Allstar Homes stated, "`[i]f there is doubt as to whether [an agreement to arbitrate] exists, the matter, upon a proper and timely demand, should be submitted to a jury.'" 711 So.2d at 929 (quoting Shearson Lehman Bros., 646 So.2d at 617)). The wording of the arbitration provision and the changes made to the contract raise legitimate doubts as to whether the parties agreed to arbitrate their disputes. Accordingly, the trial court's order granting VTP's motion to compel arbitration is reversed and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and HOUSTON and JOHNSTONE, JJ., concur.
BROWN, HARWOOD, WOODALL, and STUART, JJ., concur in the result.
SEE, J., dissents.
SEE, Justice (dissenting).
I respectfully dissent. The main opinion holds that Mountain Heating and Cooling, Inc., is not required to arbitrate its dispute with Van Tassel-Proctor, Inc., because "[t]he wording of the arbitration provision and the changes made to the contract raise legitimate doubts as to whether the parties agreed to arbitrate their disputes." 867 So.2d at 1118.
The Federal Arbitration Act creates a strong presumption in favor of arbitration. In Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Supreme Court of the United States held:
"[T]he courts of appeals have ... consistently concluded that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. We agree. The [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."
(Footnote omitted.) While "as with any other contract, the parties' intentions control,... those intentions are generously construed as to issues of arbitrability." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).
Federal courts applying this presumption in favor of arbitration have held that "any doubts about the construction or breach of the putative arbitration provision are to be resolved in favor of ordering arbitration." Johnson Controls, Inc. v. City of Cedar Rapids, 713 F.2d 370, 373 (1983); Lomax v. Woodmen of the World Life Ins. Soc'y, 228 F.Supp.2d 1360, 1363 (N.D.Ga.2002)("While arbitration agreements are creatures of contract and must be treated accordingly, courts must also be aware of the presumption in favor of arbitration in case of a contractual ambiguity."); Collins v. International Dairy Queen, Inc., 2 F.Supp.2d 1473, 1478 (M.D.Ga.1998)("[T]he standard rule of contract construction ... dictates that contracts *1119 are to be construed against the drafter.... However, this general principle relating to contracts is superseded by the federal policy which requires that construction of contract language is to be resolved in favor of arbitration where there are doubts as to the parties' intentions.").
In First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), the Supreme Court of the United States held that courts should enforce arbitration agreements when there is "`clea[r] and unmistakabl[e]' evidence that" the parties agreed to arbitrate their dispute. The contract between Mountain Heating and Van Tassel-Proctor states, in pertinent part:
"B) ARBITRATION: Subcontractor [Mountain Heating] agrees that all questions arising under this Subcontract shall be resolved in the first instance by Contractor's [Van Tassel-Proctor's] Project Manager.... Any claim not satisfactorily resolved by Contractor's Project Manager in the first instance, and which is presented in writing within the time provided, may be appealed by notice in writing to ... an Executive Officer of the Contractor if any other question under the Subcontract is involved. Such written notice and review shall be prerequisite to any further review or any legal action by the Subcontractor against the Contractor, Architect, and/or Owner. And if said dispute cannot be settled through direct discussions the parties agree to settle the dispute by arbitration under the Construction Industry Mediation Rules of the American Arbitration Association. Subcontractor agrees that it will reimburse[,] hold harmless and/or indemnify any attorney's fees and costs incurred by Contractor in connection with any dispute related to this contract, whether or not suit is filed. IN THE EVENT OF ANY LITIGATION ARISING HEREUNDER, THE CONTRACTOR AND SUBCONTRACTOR UNCONDITIONAL LY AND ABSOLUTELY WAIVE ANY AND ALL RIGHTS TO TRIAL BY JURY."
(Emphasis added; capitalization and strikeout in original.)
I believe that the parties unambiguously express their intention to arbitrate any dispute that may arise between them when they state in the contract: "if said dispute cannot be settled through direct discussions the parties agree to settle the dispute by arbitration...." The main opinion finds the contract ambiguous because (1) the parties state that they intend for their arbitration to be governed by the Construction Industry Mediation Rules of the American Arbitration Association; (2) the parties use the word "settle" rather than the word "resolve" to describe the role of the arbitrator in their dispute; (3) the parties struck a jury-waiver clause from the agreement; and (4) the parties agreed that the contract would be construed and governed by Alabama law and not by Arkansas law.
The main opinion's objections do not create any doubt that the parties clearly and unmistakably expressed an intention to arbitrate their disputes. The fact that the parties choose to arbitrate their dispute under the Construction Industry Mediation Rules of the American Arbitration Association does not render ambiguous the language in the agreement stating that the parties agree to "settle the dispute by arbitration." The main opinion finds ambiguity by ignoring the parties' plain statement that they agreed to "settle the dispute by arbitration" and by analyzing the rules that the parties have selected to govern the arbitration.
*1120 The parties' choice of arbitration procedure raises no doubts as to the gateway issue whether the parties actually agreed to arbitrate a dispute and the choice of an arbitration procedure will generally not void an arbitration clause. See Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)("Just as [the parties] may limit by contract the issues which they will arbitrate,... so too may they specify by contract the rules under which that arbitration will be conducted."). "Indeed, short of authorizing trial by battle or ordeal or, more doubtfully, by a panel of three monkeys, parties can stipulate to whatever procedures they want to govern the arbitration of their disputes; parties are as free to specify idiosyncratic terms of arbitration as they are to specify any other terms in their contract." Baravati v. Josephthal, Lyon & Ross, Inc., 28 F.3d 704, 709 (7th Cir.1994).
In PacifiCare Health Systems, Inc. v. Book, 538 U.S. 401, 407 n. 2, 123 S.Ct. 1531, 1536 n. 2 (2003), the Supreme Court of the United States held that, in a contract between several physicians and PacifiCare, the question whether remedial limitations would render their arbitration agreement unenforceable was not a gateway question of arbitrability to be decided by the court, but was instead a question to be answered by the arbitrator. The enforceability of the agreement had no bearing on the rather narrow question whether the parties had agreed to arbitrate the dispute. Similarly, in this case, whether the Construction Industry Mediation Rules of the American Arbitration Association permit an arbitrator to impose a result on the parties is not an issue before this Court in determining whether the parties unambiguously intended to settle their dispute through arbitration; issues concerning the rules governing arbitration are questions for the arbitrator to decide.[2]
The parties' use of the word "settle" in the arbitration provision instead of the word "resolve" similarly does not create doubt about the parties' intentions. The word "settle," means, among other things, "to fix or resolve conclusively." Merriam-Webster's Collegiate Dictionary (10th ed.1996).[3] Even if the use of the word "settle" might appear to create ambiguity, the general rules of contract interpretation require that "where there is a choice between a valid construction and an invalid construction the court has a duty to accept the construction that will uphold, rather than destroy, the contract and that will give effect and meaning to all of its terms." Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala.2000). The main opinion's construction of the word "settle" impermissibly gives the word "arbitrate" no field of operation and therefore does not give effect to all of the contract's terms. Moreover, given the strong federal presumption in favor of arbitration, any doubt as to the meaning of an ambiguous term must be resolved in favor of arbitration. See Johnson Controls, 713 F.2d at 373.
*1121 The fact that the parties struck jury-waiver language from the arbitration clause does not make the remaining language ambiguous. The plain meaning of the statement, "the parties agree to settle the dispute by arbitration," is not altered by the addition or subtraction later in the same paragraph of language waiving a right to a jury "[i]n the event of any litigation arising hereunder."
Finally, while the parties' modification of the choice-of-law provision in the contract affects the law to be applied by the arbitrator in settling this dispute, the choice-of-law provision does not affect our decision as to the enforceability of the arbitration clause, because the Federal Arbitration Act, 9 U.S.C. § 1 et seq., "has the effect of preempting conflicting Alabama law, in particular Ala.Code 1975, § 8-1-41(3), and thereby making enforceable a predispute arbitration agreement in a contract evidencing a transaction that involves interstate commerce." Homes of Legend, 776 So.2d at 745.
Because the parties clearly and unmistakably expressed an intention to settle their dispute by arbitration, I would affirm the trial court's order compelling the parties to arbitrate. Therefore, I dissent.
NOTES
[1] The AAA includes the arbitration rules and the mediation rules in the same brochure, but the mediation rules appear under a separate heading and are numbered M-1 through M-17, while the arbitration rules are numbered R-1 through R-54. The AAA's brochure states: "Due to the increasing popularity of mediation, especially as a prelude to arbitration, [the AAA] has combined its mediation and arbitration rules into a single brochure."
[2] For that matter, the main opinion makes no argument that the Construction Industry Mediation Rules of the American Arbitration Association are not proper rules under which to arbitrate a dispute. The rules are contained in a document entitled "Construction Industry Dispute Resolution Procedures," revised and amended as of January 1, 2003. The arbitrator could well decide that he or she is entitled to rely on any of the procedures outlined in the broader document.
[3] For example, when people have a dispute they will commonly say such things as "we'll settle this in court" or "let's settle this outside."