**ROADWAY EXPRESS, INC, Plaintiff,**

v.

**TEAMSTERS LOCAL 515, Affiliated with the Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendants.**

**Civ. A. No. C86–60R.**

United States District Court,
N.D. Georgia,
Rome Division.

April 11, 1986.

R. Bryan Struble, Jr., Ogletree, Deakins, Nash, Smoak & Stewart, Atlanta, Ga., for plaintiff.

Lynn Agee, Gerber, Gerber & Agee, Memphis, Tenn., L.N.D. Wells, Jr., Mulli-

nax, Wells, Baab & Cloutman, P.C., Dallas, Tex., Ross L. Hatcher, III, Hatcher, Johnson & Meaney, Rossville, Ga., for defendants.

## ORDER

### HAROLD L. MURPHY, District Judge.

This case is before the Court on plaintiff's motion to enjoin the defendants from striking or participating in a strike arising from a representation dispute at one of the plaintiff's loading facilities. Because the terms of the collective bargaining agreement specifically exempt representation disputes from compulsory resort to the grievance procedure, and from the agreement's no-strike clause, the plaintiff's motion will be denied.

## BACKGROUND

Plaintiff, Roadway Express, Inc., (Roadway) is a corporation with its principal offices in Akron, Ohio. Roadway operates an office and freight terminal in Ringgold, Georgia. Roadway is an "employer" within the meaning of the National Labor Relations Act (NLRA). Defendant, Teamsters Local 515, is affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, (Local 515), and is a "labor organization" within the meaning of the NLRA. Local 515 has its principal offices in Chattanooga, Tennessee and represents most of Roadway's employees at the Ringgold, Georgia facility. Roadway and Local 515's labor relationship is governed by the National Master Freight Agreement (Master Agreement) and supplemental agreements, including the Local Freight Forwarding Office Clerical Supplemental Agreement (Clerical Agreement).

Under Article 2, Section 3 of the Master Agreement, when a majority of the employees in a "unit" sign authorization cards, that designates Local 515 as their exclusive bargaining agent.[1] In this case, Local 515 is seeking to become the exclusive bargaining agents for certain clerical employees at the Ringgold facility. Local 515 presented Roadway with ten authorization cards in a unit the union states has fifteen employees. However, Roadway has asserted that ten other employees should be counted in that unit and that without thirteen authorization cards Local 515 cannot become their exclusive bargaining agent. Local 515 has threatened to strike over Roadway's refusal to recognize them as the exclusive bargaining agent for the fifteen employees.

Roadway's contention is quite simple. Roadway and Local 515's Master Agreement makes mandatory the arbitration of most disputes that arise between them. In addition, under the terms of the agreement, strikes are prohibited in matters that the parties have agreed to arbitrate, until the unsuccessful exhaustion of the arbitration process.[2] Roadway argues that this dispute is covered by the provisions of the collective bargaining agreement that mandate arbitration, and that Local 515 should thus be enjoined from striking or partici-

---

**1.** The Master Agreement states:

When a majority of eligible employees performing work covered by an Agreement designated ... to be Supplemental to the National Master Freight Agreement ... execute a card authorizing a signatory local Union to represent them as their collective bargaining agent at the terminal location, then, such employees shall automatically be covered by this Agreement and the applicable Supplemental Agreements ...

**2.** Article 8, Section 2, of the Master Agreement, which applies to all supplemental agreement, provides:

(a) The parties agree that all grievances and questions of interpretation of this Agreement shall be submitted to the grievance procedure for determination. Accordingly, except as specifically provided in other Articles of the National Master Freight Agreement, no work stoppage, slowdown, walkout or lockout shall be deemed to be permitted or authorized by this Agreement except:

(1) failure to comply with a duly adopted majority decision of a grievance committee established by the National Master Freight Agreement or Supplement Agreement;

\* \* \* \* \* \*

A "representation dispute" in circumstances under which the Employer is not required to recognize the Union under this Agreement is not subject to the grievance procedure herein and the provisions of this Article do not apply to such dispute.

pating in a strike. Local 515 contends that a representation dispute, such as this one, is specifically exempted from coverage by the collective bargaining agreement, and thus the mandatory arbitration and "no strike" provisions do not apply.

Roadway has asked this Court to: 1) interpret the collective bargaining agreement to mean that representation disputes are subject to the grievance procedure; 2) order the parties to process that dispute through the agreed upon grievance procedures; and, 3) enjoin Local 515 from striking over this dispute.

Initially the Court must ask whether it has jurisdiction and authority to interpret the collective bargaining agreement and then to determine whether the parties intended to arbitrate representation disputes of this type, and thus forbid the use of economic sanctions such as strikes. The recent decision of the Supreme Court in *AT & T Technologies, Inc. v. Communications Workers of America, et al.*, 67 Daily Labor Report (BNA) § D–1 (April 8, 1986), reaffirms the Court's jurisdiction and authority. The Supreme Court held that the district court had a duty to interpret whether the collective bargaining agreement required arbitration of a dispute. The Court laid out the four principles necessary to decide such cases, and noted their foundation in the *Steelworkers Trilogy*, decided over 25 years ago.[3]

 The first principle is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Warrior & Gulf*, 363 U.S. at 582, 80 S.Ct. at 1352. The second principle is that the question of arbitrability is an issue for judicial determination, unless the parties clearly and unmistakably provide otherwise. *Warrior & Gulf*, 363 U.S. at 582–583, 80 S.Ct. at 1352–1353. *See, Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962) *overruled in part on other grounds, Boys*

*Markets, Inc. v. Retail Clerks*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). The third principle is that, in determining whether or not the parties have agreed to submit a particular dispute to arbitration, the court may not rule on the potential merits of the underlying claim. *American Mfg. Co.*, 363 U.S. at 568, 80 S.Ct. at 1346. Indeed, the passage of the Norris-LaGuardia Act was intended to prevent the participation of courts in determining the merits of issues arising between unions and employers. 29 U.S.C. § 110. Finally, the Supreme Court stated that where the collective bargaining agreement contains an arbitration clause, there is a presumption of arbitrability. Doubts over the application of the clause should be resolved in favor of coverage. *See, Warrior & Gulf*, 363 U.S. at 582–583, 80 S.Ct. at 1352–1353. Only the "most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Warrior & Gulf*, 363 U.S. at 584–585, 80 S.Ct. at 1353–1354.

 Under the Norris-LaGuardia Act, 29 U.S.C. § 104, the Court generally may not issue injunctions prohibiting strikes or picketing. The exception to that directive is found in the Supreme Court's decision in *Boys Market*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). In situations where a collective bargaining agreement contains a mandatory grievance or arbitration procedure, a finding by a court that the strike, or potential strike, is over a dispute which both parties are contractually bound to arbitrate is a precondition to an injunctive order. *Boys Market*, 398 U.S. at 253–254, 90 S.Ct. at 1593–1594.

 After applying the terms of the collective bargaining agreement to the relevant statutory and case law the Court does not find that an injunction is appropriate in this instance. As to the first *Steelworkers* principle, the specific exemption of "representation disputes" from the mandatory grievance procedure, indicates that such a

---

**3.** *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

dispute is not one which the parties have "agreed to submit". While there is a presumption of arbitrability in the face of contractual language that states "all grievances and questions of interpretation arising from the provisions of this Agreement shall be submitted to the grievance procedures," there is an exception that specifically states that "representation disputes" are not "subject to the grievance procedure". Thus, the sort of purposeful exclusion from arbitration, required in the *Steelworkers* trilogy and their progeny, is evident here. The passage bears repetition here:

> A "representation dispute" in circumstances under which the Employer is not required to recognized the union under this Agreement is not subject to the grievance procedure herein and the provisions of this Article do not apply to such dispute.

Roadway urges a strained reading of this language upon the Court. It is their argument that the language of the "representation dispute" section applies only to cases where the company would utterly refuse to recognize the union. Thus, argues Roadway, since they consider themselves "required to recognize" Local 515 when what they consider a majority of employees have signed authorization cards, they do not want the Court to find this provision applicable.

Such a reading belies the clear sense of the provision and the statement's of management representatives. In a hearing before this Court on March 12, 1986, Roadway presented testimony from the top supervisory management person at the Ringgold facility. A portion of that testimony is illustrative:

Q: The union has made a representation claim upon you, Mr. Close, is that correct? There is a representation claim pending upon Roadway at this time?

A: Yes, sir.

Q: And at this time you dispute that claim?

A: Yes, sir.

Q: Okay. You take the position at this time that you are not obligated or that you do not have to recognize the union under the collective bargaining agreement at this time?

A: At this time, that's correct.

Q: As we sit here today, you take the position you are not obligated or required to recognize the union in the unit they asked you to recognize them in?

MR. DEAKINS: Judge, I object to this. He's asking the witness for a statement of legal position. We can argue that. The witness is testifying to facts indicating that they did deny the union recognition. He's asking him for positions of the parties.

MR. AGEE: If your Honor please, I believe this is right at the heart of the matter as far as the defendant union takes the position, and this person is the chief witness and spokesman for Roadway and needs to define for the Court what the position of the employer is with regard to their declining to recognize the union at this time. Even though it's related to contract language, it is not necessarily just something lawyers can argue.

THE COURT: I understand.

MR. DEAKINS: Judge, I view it as my position to argue the case on behalf of the client. The witness is here to testify.

THE COURT: Well, I'll overrule the objection as to any legal conclusions. I'll not accept him as testifying as to legal conclusions, but as to facts, I'll allow him to proceed. I'll overrule the objection.

A: We are obligated to recognize, but we do not, because it did not fall into what we felt was the whole clerical unit.

Q: But, Mr. Close, your statement that you're obligated to recognize the Teamsters, is that you are not obligated to recognize them when they ask you to recognize them and you're not obligated to recognize them today, but you're only obligated to recognize them at sometime in the future?

120

A: No, sir. If they have a majority for that unit.

Q: For which unit?

A: The office unit, the clerical unit they were asking for.

Q: The clerical. Well, they say they have a majority in the clerical unit they're asking for. You said the clerical unit should include other people, isn't that true?

A: Well, I consider them all clerical.

Q: All right. So at the present time, your understanding of the contract is that right now you don't have to recognize the unit in that unit as you used the phrase, isn't that true?

A: That's true.

(Transcript, filed March 17, 1986, pp. 14–16) The clear meaning of the "representation dispute" section is that the Union has preserved the right to strike where the company asserts it is not required to recognize the Union. The companies position would strip that provision of any real meaning, which could not have been the intent of the parties when they reached that agreement. Roadway is clearly asserting that it is not required to recognize Local 515 as the exclusive bargaining agent for certain employees at this time. Such representation disputes are not grounds for an injunction. For a *Boys Market* injunction to issue, there must be a violation or breach of a specific contract provision. Since the representation dispute provision applies here, and by effect takes the dispute out from the no-strike and other provisions of the collective bargaining agreement, those provisions do not apply and have not been breached. Thus, no injunction will issue.

The Court is not impressed with either side's maneuvering in this matter. The key issue is the size of the appropriate unit, not an issue for resolution by this Court. If the parties would find a way to resolve that issue, as the Court suggested they do at the hearing on March 12, 1986, there would be no conflict before the Court today.

ACCORDINGLY, plaintiff's motion for an injunction is DENIED.