794 So.2d 312 (2000)
ALABAMA CATALOG SALES
v.
Gloria HARRIS.
M.Q., Inc., d/b/a Montgomery Catalog Sales
v.
Gloria Harris.
1981594 and 1981612.
Supreme Court of Alabama.
September 15, 2000.
Rehearing Denied April 6, 2001.
*313 Peter S. Fruin of Maynard, Cooper & Gale, P.C., Montgomery; and David G. Crockett, Atlanta, Georgia, for appellant Alabama Catalog Sales.
Joseph R. Kemp, Pell City, for appellant M.Q., Inc.
Jere L. Beasley, Thomas J. Methvin, Andy D. Birchfield, Jr., and Mark Englehart of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Montgomery, for appellee.
J. Michael Rediker, Thomas L. Krebs, Michael C. Skotnicki, and Peyton D. Bibb, Jr., of Ritchie & Rediker, L.L.C., Birmingham; Joseph C. Espy III of Melton, Espy, Williams, & Hayes, Montgomery; Lange Clark, Birmingham; Daniel B. Banks, Jr., of Morris, Conchin, Banks & Cooper, Huntsville; and Steven P. Gregory, Tuscaloosa, for amicus curiae Alabama Small Loan Borrowers.
COOK, Justice.
Alabama Catalog Sales and M.Q., Inc., d/b/a Montgomery Catalog Sales are defendants in an action pending in the Montgomery Circuit Court. They appeal from the trial court's order denying their motions to compel arbitration of the claims filed against them by Gloria Harris on behalf of herself and all other persons similarly situated.
In her complaint, Harris alleges that the defendants violated the Alabama Small Loan Act[1] by making illegal "payday *314 loans" in amounts of $749.00 or less, charging usurious interest in excess of the rates allowed by the Act, and collecting on the loans without a license from the Bureau of Loans of the State of Alabama, citing Ala.Code 1975, § 5-18-2(a)(4), (5), and (6), and § 5-18-15(a). Harris contends that her contracts with the defendants are void because of illegality and, thus, that the arbitration agreements contained in those contracts are also void.
The defendants contend that Harris executed valid arbitration agreements as part of her transactions, thereby subjecting all claims to arbitration. The defendants also argue that any question regarding illegality of the contracts is a question for the arbitrator, not the trial court, relying primarily on Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).[2] The defendants *315 moved to compel arbitration pursuant to arbitration agreements executed as part of the contracts. The trial court denied their motions. The defendants appeal. We affirm.
An appeal is the proper method of challenging a trial court's order refusing to compel arbitration. A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358, 360 (Ala.1990). A motion to compel arbitration is analogous to a motion for a summary judgment. Allstar Homes, Inc. v. Waters, 711 So.2d 924 (Ala.1997); Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102 (Ala.1995). This case presents a question of law. Therefore, our review is "de novo." See Green Tree Fin. Corp. v. Vintson, 753 So.2d 497 (Ala.1999); Jim Burke Automotive, Inc. v. Murphy, 739 So.2d 1084 (Ala.1999); Patrick Home Ctr., Inc. v. Karr, 730 So.2d 1171 (Ala.1999).
The ultimate issue in this case is whether the trial court, or an arbitrator, determines the validity of a contract that contains a provision requiring that all claims arising therefrom be arbitrated.[3]
We addressed a similar issue in Camaro Trading Co. v. Nissei Sangyo America, Ltd., 577 So.2d 1274 (Ala.1991). In Camaro Trading, we affirmed the trial court's denial of a foreign corporation's motion to compel arbitration, holding that the foreign corporation could not compel arbitration pursuant to an arbitration clause in a contract because the entire contract was unenforceable and invalid as a result of the foreign corporation's failure to qualify to do business in Alabama. Id. at 1274-75. In Camaro Trading, we adopted the reasoning of the United States District Court for the Northern District of Georgia in A.J. Taft Coal Co. v. S & H Contractors, Inc. [Ms. 1-88-CV-436-MHS, October 4, 1988] (N.D.Ga.1988) (not reported in F.Supp.), aff'd. on other grounds, 906 F.2d 1507 (11th Cir.1990), cert. denied, 498 U.S. 1026, 111 S.Ct. 677, 112 L.Ed.2d 669 (1991). The district court wrote:
"The unenforceability of the contract extends to the contract's arbitration clause, so there exists no enforceable agreement between the parties to arbitrate disputes. `[T]he question of arbitrability is an issue for judicial determination....' Roadway Express, Inc. v. Teamsters Local 515, 642 F.Supp. 116, 118 (N.D.Ga.1986) (citations omitted). In any case, `arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute *316 which he has not agreed so to submit.' United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 582[, 80 S.Ct. 1347, 4 L.Ed.2d 1409] (1960). Clearly, if a party cannot be forced to arbitrate if the contract does not contain a valid arbitration clause, then a party cannot be forced to arbitrate if the contract containing the arbitration clause, which gives the arbitration clause viability, is found to be void."
Id. at 1275; see Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (Justice Breyer stated that a state retains the power to regulate contracts, including arbitration clauses, under general contract-law principles, and may invalidate an arbitration clause upon such grounds as exist at law or in equity for the revocation of any contract); see also 6 C.J.S. Arbitration § 14 (1975); 5 Am.Jur.2d Arbitration and Award § 15 (1962).
In Shearson Lehman Bros., Inc. v. Crisp, 646 So.2d 613, 616 (Ala.1994), this Court held that the question whether a valid contract exists must be judicially determined. In Shearson Lehman Bros., we relied on Three Valleys Municipal Water District v. E.F. Hutton & Co., 925 F.2d 1136 (9th Cir.1991), from which we quoted extensively. Three Valleys involved an arbitration agreement between a governmental entity and a securities corporation. Id. at 1136. The United States Court of Appeals for the Ninth Circuit addressed the question whether the individual that signed the contract containing the arbitration agreement was actually authorized to sign such a document for the governmental entity. Id. at 1138. Therefore, the question in Three Valleys was whether there ever existed an agreement to arbitrate in the first place. The Three Valleys court stated: "[A] party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate. Only a court can make that decision." Id. at 1140-41. In other words, a trial court must determine the question whether a contract containing an arbitration agreement is void.
Similarly, in this case, Harris challenges the very existence of the contracts. Harris contends that the contracts are illegal, and, therefore, void and unenforceable.
The defendants argue that Harris failed to present substantial evidence of illegality. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). We conclude that Harris presented sufficient evidence indicating that the contracts in question are illegal, and, therefore, are void and unenforceable.[4] Likewise, Harris argues, the unenforceability of the contracts *317 extends to the agreements to arbitrate. We agree. Thus, if the contracts are void and unenforceable, no claims arising out of or relating to the contracts are subject to arbitration. See Shearson Lehman Bros., supra; see also Interocean Shipping Co. v. National Shipping & Trading Corp., 462 F.2d 673, 676 (2d Cir. 1972) (issue regarding the "very existence" of a contract is justiciable); cf. Camaro Trading, supra (question of the validity of a contract involving a corporation not qualified to transact business in Alabama is to be judicially determined).
The record contains substantial evidence indicating that the underlying contracts violate the Alabama Small Loan Act. As this Court recently stated:
"[W]e have adopted the reasoning that `a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate,' and that `[o]nly a court can make that decision.'"
NationsBanc Invs., Inc. v. Paramore, 736 So.2d 589, 593 (Ala.1999), quoting Shearson Lehman Bros., Inc. v. Crisp, 646 So.2d 613, 616-17 (Ala.1994) (emphasis in Shearson Lehman Bros.).
Therefore, the trial court, as opposed to the arbitrator, must decide the ultimate question relating to the legality and enforceability of the contracts. Thus, the trial court properly denied the defendants' motions to compel arbitration. The order denying those motions is affirmed.
AFFIRMED.
MADDOX, HOUSTON, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
HOOPER, C.J., and SEE and LYONS JJ., dissent.
*318 SEE, Justice (dissenting).
I dissent from the affirmance of the order denying the defendants' motion to compel arbitration. We cannot know whether Harris's contracts with the defendants are void under the Alabama Small Loan Act until it has been determined that, as a fact, the defendants, in connection with those contracts, charged her more interest than is allowed by law. Harris alleges that the defendants charged her excessive interest; the defendants deny that they did. As the parties agreed, it is for the arbitrator, and not the court, to resolve this dispute.
This case is not analogous to Shearson Lehman Bros. v. Crisp, 646 So.2d 613 (Ala. 1994), in which this Court stated:
"In a class of cases involving the issue of a signatory's authority, and, consequently, the existence vel non of a contract that encompasses the disputed subject matter, a number of well-reasoned authorities have held that the question of the signatory's authority and agency is a threshold issue that must be adjudicated before arbitration can proceed."
646 So.2d at 616. In Shearson Lehman Bros., this Court adopted the reasoning of the United States Court of Appeals for the Ninth Circuit in Three Valleys Municipal Water District v. E.F. Hutton & Co., 925 F.2d 1136 (9th Cir.1991), including this statement:
"[W]e read Prima Paint [Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967),] as limited to challenges seeking to avoid or rescind a contractnot to challenges going to the very existence of a contract that a party claims never to have agreed to. A contrary rule would lead to untenable results. Party A could forge party B's name to a contract and compel party B to arbitrate the question of the genuineness of its signature. Similarly, any citizen of Los Angeles could sign a contract on behalf of the city and Los Angeles would be required to submit to an arbitrator the question whether it was bound to the contract, even if its charter prevented it from engaging in any arbitration."
925 F.2d at 1140. (Emphasis on avoid and rescind in original; other emphasis added.) This case is unlike Shearson Lehman Bros. and Three Valleys because Harris admits that she signed the arbitration agreements.
Harris's claim that the contracts are void, even if supported by substantial evidence, is insufficient to allow her to avoid her agreement to arbitrate her disputes arising from these contracts, which she admits she signed and which are not facially void. It is for the arbitrator to determine whether the contracts impose usurious interest rates on Harris.
LYONS, Justice (dissenting).
I find Justice See's rationale persuasive, and I join his dissent. The issue before us is thoughtfully analyzed in In re Arbitration Between Nuclear Electric Insurance Ltd. and Central Power & Light Co., 926 F.Supp. 428, 433 (S.D.N.Y.1996), where an insurance contract containing an arbitration clause was challenged for noncompliance with a Texas statute providing that "`any contract of insurance effective in this state and entered into by an unauthorized insurer is unenforceable by such insurer.'" 926 F.Supp. at 430 (quoting Tex. Ins.Code art. 1.14-1, § 8). Based on its assertion that the contract was invalid because under the Texas statute Nuclear Electric Insurance, Ltd. ("NEIL"), was an "unauthorized insurer," Central Power and Light Company ("CPL") asserted that the arbitration clause was unenforceable. After discussing the portion of Three Valleys *319 Municipal Water District v. E.F. Hutton & Co., 925 F.2d 1136 (9th Cir.1991), referred to in Justice See's dissent, the Court in Nuclear Electric Insurance stated:
"In Belship Navigation, Inc. v. Sealift, Inc., 95 Civ. 2748 (RPP), 1995 WL 447656, at *4-5 [1995 U.S. Dist. LEXIS 10541] (S.D.N.Y. July 28, 1995), the court drew a similar distinction [`between "challenges seeking to avoid or rescind a contract," which challenges would be for the arbitrator to decide, and "challenges going to the very existence of a contract that a party claims never to have agreed to," which challenges would be for the court to decide.' Nuclear Elec. Ins., 926 F.Supp. at 433-34 (quoting Three Valleys, 925 F.2d at 1140)]. Both parties there agreed that the contract they entered into, a charter fixture for a vessel, was void ab initio because it violated federal regulations. See [Belship] at *2. Nonetheless, the court held that the arbitration provision contained in the void contract was separable and granted the motion to compel arbitration. See id. at *5. The court distinguished between claims that a party's manifestation of assent is for some reason not effectivewhich are arbitrable and claims that a party never willingly manifested assent at all which are to be decided by the court. See id. at *4-5; see also Mesa Operating Ltd. Partnership v. Louisiana Intrastate Gas Corp., 797 F.2d 238, 244 (5th Cir.1986).
"The distinction drawn in these cases is eminently sound. Where a party concedes that it willingly manifested assent to a contract that includes an arbitration clause, but claims that it was induced to do so `by fraud, mistake, or duress,' or that the party was an infant at the time, or that some other circumstance justifies that party in seeking to avoid the contract, see Restatement (Second) of Contracts § 7 comment b, that party's claim is simply a defense to arbitrability that is itself arbitrable. See Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).
"Where, however, a party claims that it never actually manifested assent to a contract containing an agreement to arbitratefor example, because its signature was forged on the contract, or because an imposter purported to be an agent of that party with authority to bind it, or because the party was fraudulently told the contract was something other than what it actually was, or because the party did not intend to manifest assent but was physically compelled to do sothat party cannot be forced to arbitrate until it is first established by a court that the party willingly manifested assent to the underlying contract. See Three Valleys, 925 F.2d at 1140-41; Restatement (Second) of Contracts § 163 comment a; id. § 174 comment a.
"Other courts, including several others in this circuit, have expressly made this distinction as well. See Cancanon v. Smith Barney, Harris, Upham & Co., 805 F.2d 998, 1000 (11th Cir.1986) (per curiam) (distinguishing between fraud in the inducement and fraud in the factum); N & D Fashions, Inc. v. DHJ Indus., Inc., 548 F.2d 722, 728-29 (8th Cir.1976) (distinguishing between laches and waiver defenses, on the one hand, and defense of lack of authority of agent to bind principle, on the other); PMC, Inc. v. Atomergic Chemetals Corp., 844 F.Supp. 177, 181 (S.D.N.Y.1994) (accepting distinction drawn in Three Valleys); Jones v. Sea Tow Services Freeport New York, Inc., 828 F.Supp. 1002, 1007-10 (E.D.N.Y.1993) (distinguishing between fraud in the inducement and fraud in the *320 factum), rev'd on other grounds, 30 F.3d 360 (2d Cir.1994); Kyung In Lee v. Pacific Bullion (New York) Inc., 788 F.Supp. 155, 157-58 (E.D.N.Y.1992) (same); Pollux Marine Agencies, Inc. v. Louis Dreyfus Corp., 455 F.Supp. 211, 218 (S.D.N.Y.1978) (distinguishing between claims that affect `only the validity, legality or enforceability of a contract' from those that would `negate the existence of a contract').
"This reasoning is reinforced by Second Circuit cases holding that it is for the arbitrator and not the court to pass on a claim that a contract containing an arbitration clause is unenforceable: for failure to abide by a time limitation included in the agreement itself, see Conticommodity Serv. Inc. v. Philipp & Lion, 613 F.2d 1222, 1226 (2d Cir.1980); pursuant to the doctrine of laches, see Trafalgar Shipping Co. v. International Milling Co., 401 F.2d 568, 571-72 (2d Cir.1968); or because the party seeking arbitration has engaged in activity constituting waiver (other than prior litigation), see Doctor's Associates[, Inc. v. Distajo, 66 F.3d 438,] at 454-56 [(2d Cir.1995)]. See also Benoay v. Prudential-Bache Sec. Inc., 805 F.2d 1437, 1441 (11th Cir.1986) (stating that claims of `adhesion, unconscionability, waiver of judicial remedies without knowledge, and lack of mutuality of obligation' are to be decided by arbitrator); Unionmutual Stock Life Ins. Co. of America v. Beneficial Life Ins. Co., 774 F.2d 524, 528-29 (1st Cir.1985) (stating that claims of mutual mistake and frustration of purpose are for arbitrator to decide).
"Seen in this light, CPL's claim that the policy is rendered unenforceable by NEIL by virtue of section 8 must be submitted to the arbitrator. CPL does not dispute the fact that it willingly manifested its assent to the policy, but contends only that its manifestation of assent, by virtue of section 8, cannot legally bind it to any policy provision it now seeks to avoid. Thus, like a claim that the policy was fraudulently induced, its claim that the policy may not be enforced by NEIL is a defense to arbitrability that must itself be arbitrated.

". . . .
"Pursuant to Prima Paint [Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)], CPL's challenge to NEIL's ability to enforce the policy does not go to the `making' of the arbitration clause. Thus, neither the making of an agreement to arbitrate this dispute nor CPL's refusal to arbitrate is in issue. Accordingly, pursuant to 9 U.S.C. § 4, the petition to compel arbitration must be granted."
Nuclear Elec. Ins., 926 F.Supp. at 434-36 (emphasis added).
Harris's contention that the contract is invalid is not grounded on a claim of want of assent, but rather on a claim of unenforceability notwithstanding assent. Such a claim of invalidity must be determined by the arbitrator, not the court.
NOTES
[1] The Alabama Small Loan Act provides, in pertinent part:

"Any contract of loan in the making or collection of which any act shall have been done which violates this section shall be void, and the lender shall have no right to collect, receive or retain any principal, interest or charges whatsoever."
Ala.Code 1975, § 5-18-4(d).
[2] Like a majority of courts, this Court reads Prima Paint narrowly. In Shearson Lehman Bros., Inc. v. Crisp, 646 So.2d 613 (Ala.1994), we stated:

"[I]n Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the United States Supreme Court, construing the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (1982), held that a claim of fraud in the inducement of a contract that does not place in issue the making of the arbitration clause itself, is subject to arbitration. Prima Paint, 388 U.S. at 403-04, 87 S.Ct. 1801.... Although Prima Paint has ostensibly been construed to require the arbitration of any claim `unless there has been an independent challenge to the making of the arbitration clause itself,' Unionmutual Stock Life Ins. Co. of America v. Beneficial Life Ins Co., 774 F.2d 524, 529 (1st Cir.1985), Rhoades v. Powell, 644 F.Supp. 645, 653 (E.D.Cal.1986), aff'd sub nom., Rhoades v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 961 F.2d 217 (9th Cir.1992), it appears that the majority of courts have, on better reasoning, read Prima Paint more narrowly. In this connection, Three Valleys Municipal Water District v. E.F. Hutton & Co., 925 F.2d 1136 (9th Cir.1991), stated:
"`We do not read Prima Paint so broadly. The plaintiffs in Rhoades and Unionmutual did not challenge the making of a contract, but sought to rescind a contract that admittedly existed. Despite the broad dicta in those cases suggesting that Prima Paint extends to "all challenges to the making of a contract," we read Prima Paint as limited to challenges seeking to avoid or rescind a contractnot to challenges going to the very existence of a contract that a party claims never to have agreed to. A contrary rule would lead to untenable results. Party A could forge party B's name to a contract and compel party B to arbitrate the question of the genuineness of its signature. Similarly, any citizen of Los Angeles could sign a contract on behalf of the city and Los Angeles would be required to submit to an arbitrator the question whether it was bound to the contract, even if its charter prevented it from engaging in any arbitration.
"`Under this view, Prima Paint applies to "voidable" contractsthose "where one party was an infant, or where the contract was induced by fraud, mistake, or duress, or where breach of a warranty or other promise justifies the aggrieved party in putting an end to the contract." Restatement (Second) Contracts § 7 comment b (1981). If the dispute is within the scope of an arbitration agreement, an arbitrator may properly decide whether a contract is "voidable" because the parties have agreed to arbitrate the dispute. But, because an "arbitrator's jurisdiction is rooted in the agreement of the parties," George Day Constr. Co. v. United Bhd. of Carpenters, Local 354, 722 F.2d 1471, 1474 (9th Cir. 1984); see also I.S. Joseph Co. v. Michigan Sugar Co., 803 F.2d 396, 399 (8th Cir.1986) (an arbitrator "has no independent source of jurisdiction apart from the consent of the parties"); Smith Wilson Co. v. Trading & Dev. Establishment, 744 F.Supp. 14, 16 (D.D.C.1990) ("arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration"), a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate. Only a court can make that decision.'"
Shearson Lehman Bros., 646 So.2d at 616, quoting Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1140-41 (9th Cir.1991).
Because the present case turns on the question whether a contract exists and Prima Paint is inapplicable to challenges going to the very existence of a contract, Prima Paint is inapplicable in this case and the defendants' reliance upon that case is misplaced.
[3] The arbitration agreement executed by Alabama Catalog Sales and Harris states, in pertinent part:

"Any claims, counterclaims or other disputes which are subject to this Agreement and are in excess of the small claims court jurisdiction dollar limit must be arbitrated."
The arbitration provision executed by Montgomery Catalog Sales and Harris states, in pertinent part:
"All claims, demands, disputes, and controversies that may arise between the undersigned and Montgomery Catalog Sales, its assigns or its parent companies concerning any issue relating to this Purchase Order, and any and all issues relating to the purchase of Gift Certificates, products, or the cashing of checks of the undersigned by Montgomery Catalog Sales, its assigns or its parent companies, including, but not limited to fraud in the inducement of this contract, shall be arbitrated pursuant to the Federal Arbitration Act, and according to the rules and procedures of the American Arbitration Association."
[4] The following colloquy occurred at the hearing on the motion to compel. It concerned the procedure involved in the transactions that occurred in this case:

"BY THE COURT: So they canthey're paying ahead of time. What I'm understanding, a person needs money, they take a check to one of these companies, deposit the check, say I need a hundred dollars, okay? It's going to cost you a hundred and thirty dollars for two weeks to come back to get this check; is that right?
"BY MR. BECK [attorney for defendant]: That's correct. But they don't deposit that check. The company holds that check. And at the end of that two weeks, the customer can either bring the money up there or they can let the company deposit that check. But he gets the merchandise anyway. From the first day, he gets a certificate for that merchandise. He can order it out of the catalog, send it in to the company, redeem it any time, or wait until two years.
(footnote cont'd.)
"BY THE COURT: Well, so he's buying a hundred thirty dollars' worth of merchandise.
"BY MR. BECK: No, sir, it may be twenty-four, may be thirty dollars' worth.
"BY MR. FRUIN [attorney for defendant]: Your honor, as an example for the company that I represent, someone may go in and need a hundred dollars, they will write a check for a hundred and twenty dollars. They'll be given one hundred dollars in cash at that time, and they'll be given a twenty dollar gift certificate to purchase merchandise. They can either purchase that merchandise right there
"BY THE COURT: And get the merchandise at the time?
"BY MR. FRUIN: No, no, they can't get the merchandise at the time. We do not actually sell the merchandise. It's through a catalog service. It goes through a different company, from another state, and is shipped directly to these people's homes either through [United Parcel Service] or the Postal Service, so there's a couple of weeks before they actually get the merchandise.
"BY THE COURT: Twenty dollars' worth of merchandise?
"BY MR. FRUIN: Twenty dollars' worth of merchandise, yes, sir. Or there are instances where folks will just come in and not deposit the check, there are instances where people just purchased merchandise out of our catalogs. There's no money being paidyou know, they will write a check for a hundred dollars and they may buy a hundred dollars' worth of merchandise. It can work in either circumstance.
". . . .
"BY MR. BIRCHFIELD [attorney for plaintiff]: Judge, this whole case turns on whether or not these are loan transactions or gift certificates that they're buying. That's the whole thing, because I think that the defendant will agree that if these transactions are classified as loans, then they are illegal. They violate the Alabama Small Loan Act, if they are classified as loans. If they are not classified as loans, you know, then we don't have a case. But that's the whole.
"BY THE COURT: What do you get back for the loan from the folks? The hundred dollars?
"BY MR. BECK: You get a hundred dollars plus the merchandise."
(R.T. 7-11.)