

**FILED**
February 26, 2025 02:05 PM
SX-2013-RV-00020
**TAMARA CHARLES**
**CLERK OF THE COURT**

SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

JEROME JAMES,

          Plaintiff/Appellant,

    v.

LUNE ALEXANDER,

          Defendant/Appellee.

**CASE NO.: SX-2013-RV-00020**

Appeal from Magistrate Division
(SX-2013-SM-00065)

## ORDER

Pursuant to Memorandum Opinion entered herewith in this matter, it is hereby

ORDERED that the Judgment herein dated September 9, 2013, and entered September 10, 2013, is VACATED, and the Complaint filed February 19, 2013 is REINSTATED. It is further

ORDERED that this matter is REMANDED to the Magistrate Division for proceedings consistent with the Memorandum Opinion of this date.

DATED: February 26 , 2025.

                                                DOUGLAS A. BRADY, JUDGE

ATTEST:

TAMARA CHARLES
Clerk of the Court

By: *Paula Clayton* 02-26-2025
    *for* Court Clerk Supervisor

**IN THE SUPERIOR COURT**
**OF THE VIRGIN ISLANDS**


**FILED**
February 26, 2025 02:09 PM
SX-2013-RV-00020
**TAMARA CHARLES**
**CLERK OF THE COURT**

SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

JEROME JAMES,

            Plaintiff/Appellant,

            v.

LUNE ALEXANDER,

            Defendant/Appellee.

**CASE NO.: SX-2013-RV-00020**

Appeal from Magistrate Division
(SX-2013-SM-00065)

**2025 VI Super 7 U**

Cite as: 2025 VI Super 7 U

**Appearances**:

Jerome James
Frederiksted VI 00841
*Pro se* Appellant

Lune Alexander
Kingshill VI 00851
*Pro se* Appellee

## MEMORANDUM OPINION

**BRADY,** *Judge*.

¶1    THIS MATTER is on appeal from the Magistrate Division. Jerome James ("James") sued Lune Alexander ("Alexander") in small claims court, claiming that Alexander illegally foreclosed the security interests James had given to Alexander on vehicles he owned as collateral for a private loan. After a three-day bench trial, by Judgment entered September 9, 2013, the Magistrate Court dismissed James's Complaint with prejudice, concluding that James had not repaid the loan and, therefore, Alexander did not have to return the vehicles. James timely appealed. For the reasons stated below, the dismissal must be vacated and the Complaint reinstated and this matter remanded to the Magistrate Division to determine whether, at the time he loaned James money, Alexander was "lawfully engaged in business as permitted by the laws of this territory or of the United States relative to banks, trust companies, insurance companies, savings or building and loan associations,

credit unions or pawnbrokers." 9 V.I.C. § 182(b). If Alexander was not licensed to lend money,

then the loan between him and James was likely void under Virgin Islands law. *See id.* § 182(c).

## BACKGROUND

¶2      James filed a Complaint against Alexander in small claims court. Attached to his

Complaint was the following letter dated January 29, 2013, addressed to the Office of the

Lieutenant Governor, which states as follows:

> Alexander gave me a loan . . . . The loan was . . . $15,000.00 with an interest
> of . . . $9,600.00. Before the loan was made I raised a question of the interest charge to
> Mr. Alexander asking how much would his interest be and he simply replied "not much."
> However, when I received the promissory note that was dropped to my work place two
> weeks after I initially received the money ($15,000.00) I noticed the interest was
> $9,600.00 after I subtracted what he had written on the promissory note from the original
> amount of money I received. I called to Mr. Alexander's attention that the interest was
> high but he disregarded my concern. . . . I am formally filing a complaint against Mr.
> Lune Alexander for charging me a very high interest of $9,600 on the loan of $15,000.
> Secondly, for depriving me the legal use of my vehicles. Thirdly, for changing my name
> to his name at the beauru [sic] of motor vehicles without my knowledge. The titles were
> only given as collateral and it was never stated that in any event that he would change my
> name to his name for any given reason. He did this while payments were being made to
> him on the loan. Lastly, for making a false promissory note by lieing [sic] and stating
> things that were not true such as the amount of monies given to me and failing to include
> the cost of the interest I was being charged. Lieing [sic] in the promissory note to cover
> himself from the law because he is not licensed to provide loans and collect interest. Mr.
> Alexander said that he gave me at one time $2,200.00 in one part and then gave me an
> additional $22,400.00 in another. This is all FALSE! In the acknowledgement of the loan
> he states that I borrowed the cash amount of $24,600.00 which is false to cover his large
> interest return of $9,600.00. He also said that if I did not assume full responsibility of
> repaying my daughter's delinquent debt to him, he would not make the second part of the
> loan of $22,400 available to me. This is entirely FALSE. There was never a loan for
> $24,600, the loan was for $15,000 with an interest of $9,600 to be repaid at $400 a week
> for 61.5 weeks. I now know why Mr. Alexander has been so dishonest because he is not
> licensed to do business in the Virgin Islands even after I asked him if he was licensed and
> he responded and told me he has 34 clients and I am his 35th client. He is not authorized
> to charge such high interest on loans and has defrauded me. I am seeking justice in this
> matter.

> (Letter 1-2, from Jerome James, President of JoJesJe, Inc. d/b/a Tile Plus, to Office of the
> Lt. Gov., dated Jan. 29, 2013, attached as Ex. to Compl., filed Feb. 19, 2013 (paragraph
> breaks omitted).)

¶3      The Clerk's Office processed James's complaint and calendared the case for a bench trial

on March 12, 2013. James and Alexander appeared for trial on March 12, 2013, continued to April

9, 2013 and May 1, 2013. James, Alexander, Victorine Farrelly (a notary public), and Mark A.

Corniero (a Virgin Islands police sergeant) testified. Copies of cancelled checks and a notarized promissory note dated January 26, 2010 were admitted into evidence.

¶4        According to the nine-page promissory note, Alexander agreed to loan James $24,600 in cash: $2,200 on December 17, 2009 (referred to as a "Tier I" loan); and $22,400 on January 26, 2010 (referred to as a "Tier II" loan). James also agreed (according to the promissory note) to repay $4,470.00 that his daughter, Jesimiel James-Garcia, still owed Alexander for a 2006 loan – a prerequisite to receiving the Tier II loan. As collateral, James gave Alexander a security interest in a 2007 Suzuki Aerio and a 2002 Toyota Tundra and listed Alexander as a beneficiary on an AARP life insurance policy. James agreed "to make partial payments from his compensation, partial payments from the profits generated by his business and a $11,000.00 payment from a 'Sue Sue Hand.'"[1] *Id.* at p. 3. The balance (after the $11,000 lump sum payment) was to be repaid biweekly over forty-five weeks.

¶5        At trial, James testified that he repaid Alexander in full and further that Alexander had only loaned him $15,000, but with $9,600 in interest, which is why the amount listed in the promissory note totaled $24,600. Alexander testified to the contrary, namely that he gave James $2,200 on December 17, 2009 and $24,600 on January 26, 2010. He admitted on cross-examination, however, that the promissory note did not state whether interest was charged. James claimed that, when he signed the promissory note, he did not have a complete copy. However, Victorine Farrelly, a notary public, testified that she witnessed James and Alexander sign the note and then notarized it and the document had nine pages. Sergeant Corniero, whom James called as a witness, testified that he worked for "the Insular Investigation Bureau, which is basically a fraud unit." (Trial Tr. 21:4-5, June 12, 2013.) To his knowledge, Alexander "doesn't have a license to conduct any loans," Corniero testified. *Id.* at 21:23. On cross-examination, Corniero remarked that he was

---

[1] A sue-sue hand (also spelled sou sou, su-su or susu), sometimes called a "partner hand," a "pool hand," or a "box hand", is "a rotating savings club "with historic roots in West Africa and the Caribbean." Karen Hobbs, *A real or fake savings club?*, FTC Consumer Advice (Aug. 10, 2020), https://consumer.ftc.gov/consumer-alerts/2020/08/real-or-fake-savings-club (last visited Feb. 25, 2025). It is a "savings arrangement between a small group of trusted people—usually family and friends—who regularly pay a fixed amount into a common fund and take turns getting paid out." *Id.* The total pool, or hand, is paid to each member of the club on an agreed schedule and rotates until all members have received their share. *See id.*; *see also Speare v. Johnson*, 978 N.Y.S.2d 644, 645 (Civ. Ct. 2014).

not aware of the loan between James and Alexander, only "bounced checks" that Alexander reports to him. *Id.* at 28:7.

¶6 During closing arguments, James criticized the amount of interest that Alexander charged him—$9,600 on a $15,000 loan—but admitted that he "had no problem in paying him." *Id.* at 31:22-23. He agreed to repay $24,600. But he denied that he agreed to assume his daughter's debt and claiming that Alexander was "holding my vehicles hostage for my daughter's so-called . . . loan." *Id.* at 31:25-32:1. "So he having my vehicles hostage is illegal," James argued. *Id.* at 32:3. Alexander countered that James still owed $5,300 for this daughter's debt, $140 for returned check fees, and the costs Alexander incurred to "insur[e] and register[] his Toyota Tundra truck and the Suzuki Aero [sic] motor vehicle." *Id.* at 20:21-22. Whether James could retake possession of his vehicles was "a function of the outcome of this hearing," Alexander noted. *Id.* at 37:9-10. But he pointed out that the entire note—not just the Tier I and Tier II loans—was collateralized by the vehicles.

¶7 The Magistrate Court took the matter under advisement, later issuing a decision in writing. In its Judgment, the Magistrate Court concluded that the promissory note was a contract and "[u]nder Virgin Islands law, 'when parties to an agreement reduce their understanding to a writing that uses clear and unambiguous terms, a court should look no further than the writing itself when asked to give effect to that understanding.'" (Jgmt 3, entered Sept. 10, 2013 (quoting *Dyer v. Worldwide Protein, Inc.*, 21 V.I. 275, 278 (Terr. Ct. 1985), *aff'd* 1986 U.S. Dist. LEXIS 31308 (D.V.I. App. Div. June 17, 1986)).) Since "the contract explicitly states that James must pay . . . $29,070.00 . . . [and he] . . . admits that at this time he has only paid . . . $24,600.00 . . . the loan is not discharged and James has no right to the return of the collateral." Accordingly, the Magistrate Court dismissed James's Complaint with prejudice. James appealed to the Appellate Division.[2]

## JURISDICTION AND STANDARD OF REVIEW

¶8 A final judgment of the Magistrate Division that resolves completely the merits of a small claims case over which it has original jurisdiction pursuant to 4 V.I.C. § 123(a)(4) is appealable to the judges of the Superior Court. *See* V.I. Super. Ct. R. 322(a). The original case file, including all exhibits and evidence taken by the Magistrate Judge in consideration of the case, including the

---

[2] The appeal was reassigned to the undersigned judge on April 4, 2018 after the recusals of other judges.

written transcript of proceedings, constitutes the record on appeal. *See* V.I. Super. Ct. R. 322(b)(6)(i).

¶9     An oral decision or written judgment affirming the order of the magistrate judge in all respects and for the same reasons elucidated by the magistrate judge need not set forth the reasons for affirmance; however, the basis for the decision must be explained if the judge elects to affirm on different grounds, to reverse or vacate the order of the magistrate judge in whole or in part, or if the judge is asked to rule on a matter raised but not addressed by the magistrate judge. *See* V.I. Super. Ct. R. 322 (c)(5)(i). Because this Opinion vacates the Judgment, reinstates the Complaint, and remands the matter to the Magistrate Division, it is necessary to explain the bases for this decision.

## DISCUSSION

¶10     On appeal, James argues that the promissory note is null and void because Alexander lied in court. (*See* Pet. for Review 1, filed Sept. 16, 2013 ("Alexander on June 12[th] 2013 in court confessed and testified that he did not gave [sic] me $24,600—as stated in his contract, he lied, and asked . . . [the court] to forgive him. That made the contract none [sic] and void.").) James may be correct that the contract is null and void, but not because Alexander lied. The Magistrate Court clearly found Alexander credible based upon the evidence before it, and appellate courts cannot disturb the trial court's credibility findings. *See Ascencio v. Caribe Home Center, Inc.*, Case No. SX-12-SM-459, 2013 V.I. LEXIS 74, *9 (V.I. Super. Ct. Oct. 29, 2013) ("[O]n appeal this Court cannot resolve such conflicts, weigh the evidence, or assess witness credibility. The Magistrate Court, as the finder or [sic] fact, properly made these determinations." (citing *Smith v. People*, 51 V.I. 396, 401 (2009)).

¶11     But James did allege in his Complaint that Alexander was not licensed to loan money. The Magistrate Court framed the dispute as a question regarding the interpretation of a contract. (*See* Jgmt 3 ("At issue is whether James has satisfied his loan obligation to Alexander such that Alexander should return the two vehicles to James and/or pay James Ten Thousand Dollars ($10,000.00) as compensation for the value of the vehicles.").) The court concluded that "the contract explicitly states that James must pay . . . $29,070.00 . . . before the loan is satisfied." *Id.* Yet, because James admitted that "he has only paid . . . $24,600.00 . . . under the explicit terms of

the actual writing," the court concluded that "the loan is not discharged and James has no right to the return of the collateral." *Id.*

¶12 The court acknowledged James's fraud claim, but rejected it, explaining that under Virgin Islands law, "[w]here an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement." *Id.* at 4 (quoting *The Lodge, Inc. v. Caravelle Restaurant, Inc.*, 20 V.I. 268, 278 (Terr. Ct. 1984)). James "performed by the terms of the contract and paid Alexander . . . $400.00 . . . a week without objection" and "never objected to the contract until he had his trucks seized by Alexander." *Id.* Accordingly, the Magistrate Court concluded that "[t]hese facts show that the contract represents the intent of the parties and controls this action." *Id.*

¶13 To the extent that this case concerns the interpretation of a contract, the Magistrate Court is correct. *Cf. Philip v. Marsh-Monsanto*, 66 V.I. 612, 624 (2017) ("If a contract is unambiguous, the meaning of its terms is a question of law." (quotation marks, brackets, and citations omitted)); *see also id.* at 625 ("Where the language of a contract is clear and unambiguous, the parties' intent must be derived from the plain meaning of its terms." (citations omitted)). In the Virgin Islands, "the elements of an enforceable contract are an offer, acceptance of that offer, and consideration. 'In addition to offer, acceptance, and consideration, a valid contract requires that the parties assent to the same terms; that is, that they have a meeting of the minds.'" *Agueda v. Marcano*, 2024 VI 22, ¶ 24 (footnote and citation omitted).

¶14 When Alexander offered to loan James money and James took that money from Alexander and agreed to repay him, a contract was formed. *See, e.g., Nat'l Bank of Paulding v. Fid. & Cas. Co.*, 131 F. Supp. 121, 123-24 (S.D. Ohio 1954) ("In order to have a loan, there must be an agreement, either expressed or implied, whereby one person advances money to the other and the other agrees to repay it upon such terms as to time and rate of interest, or without interest, as the parties may agree."); *Bariffe v. Estate of Nelson*, 153 So. 3d 613, 619 (Miss. 2014) ("No citation of authority is necessary for the proposition that a loan indeed is a contract."). But a contract must also be valid to be enforceable. *Cf. Brouillard v. DLJ Mortg. Capital, Inc.*, 63 V.I. 788, 794 (V.I. 2015) ("In order for the Brouillards' contract with the bank to be void, it would have to be 'illegal or contrary to public policy[,]' or there would have to be evidence that there was no meeting of

the minds over the terms of the contract itself, proving that a contract was never formed." (citation omitted)). And here, the contract between Alexander and James may not have been valid because it may have violated public policy.

¶15    The Virgin Islands Small Loans Law prohibits persons from "engag[ing] in the business of making loans in amounts of $7,500 or less and contract[ing] for . . . any charges . . . which in the aggregate are greater than otherwise authorized by law" unless the person "first obtain[s] a license from the Banking Board." 9 V.I.C. § 182(a). The word "person" encompasses "individual[s]." *Id.* § 181. Loaning money for profit without a license is a misdemeanor punishable by a fine of not more than $500, and any contract entered in violation of section 182(a) is void. *See id.* § 182(c).

¶16    Although the Magistrate Court did not address James's allegation that Alexander was not licensed to provide loans or collect interest or make any findings on whether Alexander was engaged in the business of lending money, the record clearly shows that Alexander was. Alexander loaned money to James at least twice before and had loaned money to James's daughter. Alexander also testified that he regularly refers people to the police who default on his loans. But the evidence also established that the loan from Alexander to James exceeded $7,500, and the Virgin Islands Small Loans Law only applies to "loans in amounts of $7,500 *or less*." *Id.* § 182(a) (emphasis added). At first glance, it would appear as though the Virgin Islands Small Loans Law does not apply here. The statute does not state that a loan above $7,500 is not governed by the statute or that persons who make loans larger than $7,500 do not have to be licensed. But when the law is read as a whole, that inference is reasonable.

¶17    Courts must read statutes in their entirety, avoiding giving effect to one part of the law without looking to other parts. *See One St. Peter, LLC v. Bd. of Land Use Appeals*, 67 V.I. 920, 926 (2017) ("[Courts] remain mindful that 'a statute should not be construed and applied in such a way that would result in injustice or absurd consequences.' An interpretation must also give effect to every provision . . . 'making sure to avoid interpreting any provision in a manner that would render it—or another provision—wholly superfluous and without an independent meaning or function of its own.'" (citations and brackets omitted)). Subsection (a) of section 182 directs that "[n]o person shall, *without first obtaining a license from the Banking Board* as hereinafter provided, engage in the business of making loans in amounts of $7,500 or less . . . ." 9 V.I.C. § 182(a) (emphasis added). Again, the statute clearly does not speak to loans above $7,500. But

when the statute is read in its entirety, it is clear that a loan of more than $7,500 is deemed to not be a "small" loan because section 182(b) provides that the $7,500 limit (and the requirement to be licensed) does not apply to "any person lawfully engaged in business as permitted by the laws of this territory or of the United States relative to banks, trust companies, insurance companies, savings or building and loan associations, credit unions or pawnbrokers or to loans made by them . . . ." *Id.* § 182(b). Instead, loans larger than $7,500 are deemed to be within the business of banks, credit unions, and other savings and loan associations and governed by the requirements that govern such entities. It would be absurd to conclude that the Legislature intended to allow persons, like Alexander, who are engaged in the business of making loans to loan one penny more than the amount set by statute ($7,500) and thereby avoid the requirement that they be licensed by the Banking Board.

¶18     The evidence and testimony clearly showed that Alexander loaned James more than $7,500. However, James also gave Alexander security for the loan. Section 183 of title 9 provides that "[a] licensee may lend any sum of money, goods, or things of value not exceeding in amount or value $9,500, excluding interest charges, upon such security not forbidden by section 187 . . . ." 9 V.I.C. § 183(a).[3] Subsection (b) further directs that "[n]o licensee shall, with the intent to circumvent the provisions of this chapter, originate a loan or loans to any person that will obligate the person to the licensee on one or more contracts of loan, the total principal balance of which is *more than $9,500*." *Id.* § 183(b) (emphasis added). A licensed moneylender may also "purchase . . . loans . . . in excess of $9,500" and may also renew such loan "in excess of $9,500" one time thereafter. *Id.*

¶19     When read as a whole, the Virgin Islands Small Loan Law clearly allows a lender to make unsecured loans up to $7,500 and to make a secured loan up to $9,500. But whether a loan is for "$7,500 or less" or for "more than $9,500," the clear intent of the law is to require that moneylenders be licensed. *See id.* § 196 ("No person . . . shall make any loan of money . . . without holding a license from the Banking Board."). The question then becomes whether Alexander was

---

[3] Real estate is the only type of security forbidden. *See* 9 V.I.C. § 187 ("No licensee shall be permitted to accept real estate as collateral on a loan under this subchapter."). Household furniture is also exempted but only after a court finding that it is not needed by the debtor. *See id.* ("No licensee shall enforce a lien on any item of household furniture in use except on order of a court after a finding that continued possession and use of the item by the borrower is not necessary to avoid undue hardship on the borrower or his family.").

licensed to lend money. And that question is a question of fact this Court cannot determine on the present record.

¶20     If Alexander was not licensed—and perhaps even if he was since the amount Alexander loaned James was more than $9,500—then the January 26, 2010 promissory note likely was not a valid contract and would have violated Virgin Islands law. *See id.* § 182(c) ("Any contract of loan . . . which violates subsection (a) of this section shall be void and the lender shall have no right to collect, receive or retain any principal, interest or charges whatsoever."). "[B]y violating the Small Loan Law . . . [the lender] is not entitled to recover or collect any 'principal, charges or recompense whatsoever.' Thus, not only is there a forfeiture of principal, but there is a forfeiture of interest." *Island Fin. of the V.I. v. Frett*, 21 V.I. 161, 167 (Terr. Ct. 1984); *see also* 9 V.I.C. § 182(c). Virgin Islands courts have consistently refused to enforce contracts that violate the law, including the Small Loans Law. *See Island Fin. of the V.I.*, 21 V.I. at 166 (disallowing recovery on void contract) ("Island Finance has 'no right to collect or receive any principal, charges or recompense whatsoever' from the defendant Dowe for the loan in question." (quoting 9 V.I.C. § 183(g))[4] (citing *Gen. Elec. Credit Corp. of St. Croix v. Charles*, 10 V.I. 142 (Terr. Ct. 1973)); *see Gen. Elec. Credit Corp. of St. Croix*, 10 V.I. at 145 ("The interest charges imposed by this contract violate both the usury law . . . and the small loan law . . . and under provisions of 9 V.I.C. 182(c), the contract is illegal, unenforceable and void."); accord Agueda, 2024 VI 22 at ¶ 29 ("[T]his Court is barred from enforcing any alleged oral contract for the sale of land unless the oral agreement is reduced to writing and signed by the party to be charged." (citing 28 V.I.C. § 242 (Virgin Islands statute of frauds))).

¶21     Other jurisdictions similarly refuse to enforce the contracts for loans made by unlicensed moneylenders. *See, e.g., Rivera v. Schlick*, 887 A.2d 492, 497 (D.C. 2005) ("'[I]f the disputed loan was made by one who was engaging in the business of lending money in violation of the law, and if the loan was made in the course of that business, then it constituted an illegal contract.' Thus an individual in the business of lending money without a license does so illegally, and as a consequence that lender has no recourse to enforce the contract." (quoting *Hartman v. Lubar*, 133 F.2d 44, 45 (D.C. Cir. 1942)); *see also Waggener v. Holt Chew Motor Co.*, 274 P.2d 968, 971 (Colo. 1954) ("Valid contracts may not arise out of transactions forbidden by law. The illegality

---

[4] Codified presently at 9 V.I.C. § 183(h).

inhering at the inception of such contracts taints them throughout and effectually bars enforcement."); *Currier v. Tuck*, 287 A.2d 625, 627 (N.H. 1972) ("Loans made in violation of earlier small loan statutes have been declared void and the collection of either interest or principal enjoined." (citation omitted)); *accord Ala. Catalog Sales v. Gloria Harris M.Q., Inc.*, 794 So. 2d 312 (Ala. 2000) (affirming denial of motion to compel arbitration because contract violated small loan law).

¶22     Courts cannot enforce contracts that violate public policy. Rather, "if a contract is void as against public policy, the courts will refuse to enforce the same and will leave the parties in the identical situation in which it finds them." *Worlton v. Davis*, 249 P.2d 810, 814 (Idaho 1952). "A contract is against public policy if it is injurious to the interests of the public or contravenes some established interest of society. The formulation of public policy must be well defined and dominant and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Police Benevolent Ass'n Local (190 & 816) v. Gov't of the V.I.*, Civ. No. 5/1990, 1990 V.I. LEXIS 33, *4-5 (V.I. Terr. Ct. Apr. 10, 1990) (quotation marks and citations omitted). Virgin Islands public policy declares contracts made by unlicensed moneylenders to be void.[5] *See* 9 V.I.C. §§ 182(c), *see also id.* § 183(h). This policy is well defined, and the Magistrate Court erred by failing to consider it in rendering its decision.

¶23     For the reasons set forth above, the Magistrate Court may have erred by enforcing a contract that violated public policy. However, because the court disregarded James's allegation that Alexander was not licensed to lend money, the dismissal must be vacated and the Complaint reinstated and this matter remanded for the Magistrate Court to determine whether Alexander was licensed to engage in the business of lending money and, if not, what relief, if any, to award James.

---

[5] Courts have recognized that "an occasional isolated act of loaning money as an accommodation to a customer or friend is not engaging in the business of making loans." *Currier*, 287 A.2d at 627 (citations omitted)). But courts have also recognized that "whether one is engaging in a business is to be determined from all the circumstances, and one act can be sufficient to support a finding that one was engaged in business." *Hammond v. Reeves*, 552 P.2d 1237, 1239 (N.M. 1976) (citing *Currier*, 287 A.2d 625; *Johnson v. United States*, 84 F.2d 114 (5th Cir. 1936); *Commonwealth v. Schwartz*, 83 N.E. 326 (Mass. 1908)); *accord Bunch v. Terpenning*, 229 P.3d 574, 577 (Okla Ct. Civ. App. 2009) ("A review of case law from Oklahoma and other jurisdictions reveals no case determining what number of loans constitutes regular engagement in the business of making loans." (footnote omitted)). Here, Alexander's own testimony—that he regularly referred his customers who defaulted to the police—shows that the loan to James was not an isolated act.

¶24    Accordingly, an Order is entered herewith vacating the September 9, 2013 Judgment, of the Magistrate Division, reinstating James's Complaint, and remanding that matter to the Magistrate Division for further proceedings consistent with this Opinion.

DATED: February 26, 2025.

_____
DOUGLAS A. BRADY, JUDGE

ATTEST:

TAMARA CHARLES
Clerk of the Court

By: _Paula Clayton    02-26-2025_
    *for* Court Clerk Supervisor

IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**
February 26, 2025 02:15 PM
SX-2013-RV-00020
**TAMARA CHARLES**
**CLERK OF THE COURT**

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
### District of St. Croix

**JEROME JAMES,**
                    **Appellant**

**v.**

**LUNE J. ALEXANDER,**
                    **Appellee.**

Case Number: **SX-2013-RV-00020**

Action: **Magistrate Appeal**

## NOTICE of ENTRY
### of
### MEMORANDUM OPINION/ORDER

**To:**   Jerome James                        Lune Alexander

**Please take notice that on**
**a(n)**           **Memorandum Opinion / Order**
           **dated**      **February 26, 2025**    **were entered**
           **by the Clerk in the above-titled matter.**

**Dated:**   **February 26, 2025**

                        **Tamara Charles**
                        **Clerk of the Court**

**By:** *Paula Clayton*

                        **Court Clerk III**